**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ESTHEFANY HEREDIA, ESLAINI FERNANDEZ, and ESTELA TAVERAS, Individually and on Behalf of All Other Persons Similarly Situated, | Civil Action No.: 17-cv-06219 |
| Plaintiffs, | |
| -against- | |
| AMERICARE, INC., MARTIN KLEINMAN and JOHN DOES #1-10, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW SUBMITTED**
**IN OPPOSITION TO PLAINTIFFS' MOTION FOR**
**CERTIFICATION OF CLASS AND COLLECTIVE ACTION**

**PECKAR & ABRAMSON, P.C.**
Attorneys for Defendants
1325 Avenue of the Americas, 10th Fl.
New York, NY 10019
P.: 212-382-0909
F.: 212-382-3456

On the Brief:
Kevin J. O'Connor
Joseph M. Vento

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ...........................................................................................2

ARGUMENT ...............................................................................................................4

    POINT I ................................................................................................................4

    LEGAL STANDARD FOR COLLECTIVE AND CLASS ACTIONS ......................4

        A.    Legal Standard for an FLSA Collective Action....................................4

        B.    Legal Standard for a Class Action. .......................................................5

    POINT II ...............................................................................................................7

    THE PERTINENT FEDERAL AND LABOR LAW STATUTES AT ISSUE ...........7

        A.    The FLSA...............................................................................................7

        B.    New York Labor Law as Pertains to HHAs...........................................9

            1.    The NYDOL's March 11, 2010 Opinion Letter excluding
                 sleep and meal break periods from time worked for HHAs
                 during 24 hour shifts. .............................................................10

    POINT III ............................................................................................................13

    THE COURT SHOULD DENY PLAINTIFFS' MOTION BECAUSE THE
    CLAIMS HEREIN ARE ILL-SUITED FOR CLASS-WIDE RESOLUTION ..........13

        A.    Plaintiffs' Proposed FLSA Collective and New York State Class
             for HHAs Who Were Allegedly Not Paid Time and One Half
             Their Regular Hourly Rates on or After January 1, 2015...................13

        B.    Plaintiffs' 24 Hour Claims..................................................................15

    POINT IV ............................................................................................................17

    PLAINTIFFS WERE EACH PAID THE PROPER RATES PURSUANT TO
    THE WAGE PARITY ACT AND WERE PROVIDED THE PROPER
    NOTICES UNDER THE NEW YORK WAGE THEFT PREVENTION ACT..........17

i

POINT V ....................................................................................................................18

PLAINTIFFS FAIL TO MEET THEIR BURDEN OF DEMONSTRATING
NUMEROSITY TO OBTAIN CLASS CERTIFICATION UNDER RULE 23 ..........18

CONCLUSION.................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Andryeyeva v. New York Health Care, Inc.*,
    153 A.D. 3d 1216, 61 N.Y.S.3d 280 (2d Dep't 2017) ...........................................................11

*Bonn-Wittingham v. Project O.H.R.*,
    2017 WL 2178426 (E.D.N.Y. May 17, 2017) ................................................................12, 16

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010)......................................................................................5, 6, 7

*Cowell v. Utopia Home Care, Inc.*,
    2016 WL 4186976 (E.D.N.Y. Aug. 8, 2016)....................................................................15

*Cunningham v. Elec. Data Sys. Corp.*,
    754 F.Supp.2d 638 (S.D.N.Y. 2010)................................................................................5

*De Carrasco v. Life Care Services, Inc.*,
    2017 WL 6403521 (S.D.N.Y. Dec. 15, 2017) ........................................................12, 14, 16

*Demarco v. Edens*,
    390 F.2d 836 (2d Cir. 1968)..........................................................................................18

*Edge v. C. Tech Collections, Inc.*,
    203 F.R.D. 85 (E.D.N.Y. 2001) ....................................................................................18

*Flores v. Osaka Health SPA, Inc.*,
    2006 WL 695675 (S.D.N.Y. Mar. 16, 2006) .....................................................................5

*Hypolite v. Health Care Services of New York, Inc.*,
    2017 WL 2712947 (S.D.N.Y. 2017)...........................................................................14, 15

*i.e., Tokhtaman v. Human Care, LLC*,
    149 A.D.3d 476, 52 N.Y.S.3d 89 (1st Dep't 2017) .........................................................11, 12

*In re Initial Pub. Offering Sec. Litig. ("In re IPO")*,
    471 F.3d 24 (2d Cir. 2006).........................................................................................5, 6, 7

*Lynch v. United Services Auto. Ass'n.*,
    491 F.Supp.2d 357 (S.D.N.Y. 2007)................................................................................5

*Mata v. Footbridge, LLC*,
    2015 WL 3457293 (S.D.N.Y. June 1, 2015) ......................................................................4

*McGlone v. Contract Callers, Inc.*,
   867 F.Supp.2d 438 (S.D.N.Y. 2012)................................................................4, 5

*McNeill v. New York City Hous. Auth.*,
   719 F.Supp. 233 (S.D.N.Y. 1989) .......................................................................18

*Moreno v. Future Care Health Servs., Inc.*,
   153 A.D.3d 1254, 61 N.Y.S.3d 589 (2d Dep't 2017) ...........................................11

*Myers v. Hertz Corp.*,
   624 F.3d 537 (2d Cir. 2010)........................................................4, 5, 7, 14, 16

*Robidoux v. Celani*,
   987 F.2d 931 (2d Cir. 1993).................................................................................18

*Romero v. ABCZ Corp.*,
   2015 WL 2069870 (S.D.N.Y. Apr. 28, 2015).......................................................4

*Romero v. H.B. Auto. Grp., Inc.*,
   2012 WL 1514810 (S.D.N.Y. May 1, 2012) .........................................................4

*Sanchez v. JMP Ventures, L.L.C.*,
   2014 WL 465542 (S.D.N.Y. Jan. 27, 2014) .........................................................4

*Severin v. Project OHR, Inc.*,
   2012 WL 2357410 (S.D.N.Y. June 20, 2012) ....................................5, 6, 8, 11, 12, 14, 15, 16

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*,
   546 F.3d 196 (2d Cir. 2008).................................................................................6

*Torres v. Ridgewood Bushwick Senior Citizens Homecare Council, Inc.*,
   2009 WL 1086935 (E.D.N.Y. Apr. 22, 2009) .......................................................8

*Velez v. Majik Cleaning Service, Inc.*,
   2005 WL 106895 (S.D.N.Y. Jan. 19, 2005) ........................................................18

## <u>STATUTES</u>

29 U.S.C. § 207(a)(1)..............................................................................................7

29 U.S.C. § 213(a)(15)..........................................................................................8, 9

29 U.S.C. § 216(b)................................................................................................1, 4

New York Labor Law § 195(1)(a)  .......................................................................17

New York Labor Law § 652(1) .............................................................................10

New York Wage Parity Act ...................................................................1, 2, 7, 17, 19

New York Wage Theft Prevention Act........................................................................1, 3, 17

## **OTHER AUTHORITIES**

29 C.F.R. § 552.6.1 ..........................................................................................................8

29 C.F.R. § 785.19 ..........................................................................................................12

29 C.F.R. § 785.22 ..........................................................................................................12

12 N.Y.C.R.R. § 142-2.1(b).............................................................................................12

12 NYCRR § 142-2.2 ......................................................................................................10

12 N.Y.C.R.R. § 142-3.1(b).............................................................................................11

12 N.Y.C.R.R. § 142-3.2 ..............................................................................................9, 10

Fed. R. Civ. P. 23 ................................................................................................5, 6, 7, 18

Fed. R. Civ. P. 23(a) ............................................................................................5, 6, 18

Fed. R. Civ. P. 23(b) ............................................................................................6, 7, 16

## PRELIMINARY STATEMENT[1]

Defendants, Americare, Inc. ("Americare") and Martin Kleinman ("Kleinman") (collectively "Defendants"), respectfully submit this Memorandum of Law in opposition to the motion filed by Plaintiffs, Esthefany Heredia ("Heredia"), Eslaini Fernandez ("Fernandez") and Estela Taveras ("Taveras") collectively, "Plaintiffs"), seeking an Order certifying Plaintiffs' proposed Class and Collective Action.

In this case, Plaintiffs allege that Defendants violated the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") by failing to pay them proper minimum wage/wage parity, overtime and spread of hours. Plaintiffs further allege that Defendants failed to provide them with proper notice as required by the New York Wage Theft Prevention Act ("WTPA").  By way of the instant motion, Plaintiffs seek both collective certification pursuant to 29 U.S.C. § 216(b), and class certification pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure over the following group of employees:

(a)    A New York State Class on behalf of Plaintiffs and similar HHAs of home health aides ("HHAs") who worked for Americare on or after August 16, 2011;

(b)    A FLSA Collective Action on behalf of Plaintiffs and similar HHAs who were not paid full overtime wages under the FLSA on or after January 1, 2015; and

(c)    A New York State Class on behalf of Plaintiff and similar HHAs who did not receive notices pursuant to the WTPA.

As discussed more fully below, pursuant to well-settled law of the Second Circuit, Plaintiffs' motion for class and collective certification must be denied because a fact specific and individualized analysis of each potential plaintiff's terms and conditions of employment must be undertaken in order to determine whether proper minimum and overtime wages were paid, which

---

[1]    Unless otherwise noted, all Exhibits cited herein refer to the Exhibits attached to the Declaration of _____ submitted in opposition to Plaintiffs' motion.

is ill-suited for class-wide resolution. Moreover, the motion must be denied because Plaintiffs were each paid proper hourly, minimum wage and overtime rates and provided with appropriate notice pursuant to the WTPA. In any event, Plaintiffs fail to meet their burden of establishing numerosity as to HHAs who allegedly worked overtime after January 1, 2015 but were not paid time and a half their regular rate.

## STATEMENT OF FACTS

Americare is a licensed home care services agency located at located at 2255 Coleman Street, Brooklyn New York. (*See* Declaration of David Helfgott ("Helfgott Decl."), ¶ 2). Americare provides 24 hour home health care services to the aged and infirmed throughout the five boroughs of New York City. (*Id.*). Americare employs HHAs to perform such services. (*Id.* at ¶ 3).

HHAs who work 24 hour shifts are advised and required to acknowledge that they are only permitted to work 13 hours during such shifts and that during the remaining 11 hours they are required to use 8 hours for uninterrupted sleep breaks and 3 hours for uninterrupted meal breaks. (*See* Ex. A). HHAs are paid for 13 hours of a 24 hour shift based on the fact that they do not work 11 hours of such shifts due to their 8 hour sleep and 3 hour meal breaks. (*Id.*). If a HHA is unable to take an 8 hour sleep or 3 hour meal break due to the client's condition, or for any other reason, the HHA is required to report the issue to his or her supervisor who will then take action immediate to remedy the issue. (*Id.*).

This policy was pursuant to long-standing policies in the industry, which was discussed in a March 11, 2010 New York Department of Labor Opinion Letter entitled "Live–In Companions" (the "NYDOL Opinion Letter"). (*See* Ex. B).

HHAs provide health care services to clients at the direction of written plans of care, which identify the exact functions that need to be performed for a specific client based on the

client's individual health condition and related needs. (*See* Ex. C). Each plan of care is different due to the differing needs of a client resulting from his or her individual health condition. (*See* Helfgott Decl., ¶ 8).

Plaintiffs were each members of Local 248-S U.F.C.W and then UFCW Local 2013 starting in April 2013. (*Id.* at ¶ 9). As such, each Plaintiff's terms and conditions of employment, including pay rates and increases, were governed at all times by the respective collective bargaining agreement ("CBA"). (*See* Ex. D).

Plaintiff Heredia began working for Americare as a HHA on or about January 31, 2012, and remains employed to the current date in a part-time capacity. (*Id.* at ¶ 13). Fernandez began working for Americare as a HHA on or about July 13, 2010, and is still employed. (*Id.* at ¶ 23). Taveras began working for Americare as a HHA on or about August 25, 2010, and is still employed. (*Id.* at ¶ 30). All three worked a combination of hourly shifts of 12 hours or less and 24-hour "Live In" shifts throughout their employment at Americare. (*Id.*, *passim*).

Plaintiffs were paid all proper minimum and overtime wages during the course of their employment at Americare. (*See* Exs. F, H-I).Plaintiffs were also provided with proper Notice of Pay Rate and Payday Under Section 195.1 of the New York State Labor Law as required by the New York Wage Theft Prevention Act. (*See* Ex. J).

# ARGUMENT

## POINT I

### LEGAL STANDARD FOR COLLECTIVE AND CLASS ACTIONS

**A.      Legal Standard for an FLSA Collective Action.**

The Second Circuit Court of Appeals has endorsed a two-step framework for determining whether the court should certify an FLSA case as a collective action under 29 U.S.C. § 216(b). *See Myers v. Hertz Corp.*, 624 F.3d 537, 554-555 (2d Cir. 2010). This process requires an analysis of whether prospective plaintiffs are "similarly situated" at two different stages: an early "notice stage" and again after discovery is fundamentally complete. *See McGlone v. Contract Callers, Inc.*, 867 F.Supp.2d 438, 442 (S.D.N.Y. 2012). At the first stage, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Myers*, 624 F.3d at 555.  At stage two, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted-in are in fact 'similarly situated' to the named plaintiffs." *Id.* If the court concludes that they are not, the action may be "de-certified."  *Id.* at 555.

During the first stage, the evidentiary standard is lenient and Plaintiffs need only "make a modest factual showing that [she] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the [FLSA]." *Romero v. ABCZ Corp.*, 2015 WL 2069870, at *1 (S.D.N.Y. Apr. 28, 2015) (citing *Myers*, 624 F.3d at 555); *see also Mata v. Footbridge, LLC*, 2015 WL 3457293, at *2 (S.D.N.Y. June 1, 2015). That being said, "certification is not automatic." *Romero v. H.B. Auto. Grp., Inc.*, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012). Although Plaintiffs' burden of proof is low, "it is not non-existent." *Sanchez v. JMP Ventures, L.L.C.*, 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014). The "modest factual showing"

required for conditional certification "cannot be satisfied simply by unsupported assertions." *Myers*, 624 F.3d at 555. Rather, Plaintiff must offer "actual evidence of a factual nexus" between her own experience and the experiences of those she claims as "similarly situated," rather than "mere conclusory allegations." *Flores v. Osaka Health SPA, Inc.*, 2006 WL 695675, at *2 (S.D.N.Y. Mar. 16, 2006). In considering Plaintiff's motion, "the [C]ourt does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Cunningham v. Elec. Data Sys. Corp.*, 754 F.Supp.2d 638, 644 (S.D.N.Y. 2010) (quoting *Lynch v. United Services Auto. Ass'n.*, 491 F.Supp.2d 357, 368 (S.D.N.Y. 2007)). It merely "examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated." *McGlone*, 867 F.Supp.2d at 442. If the Court finds that they are, it will conditionally certify the class and order that notice be sent to potential class members. *Cunningham*, 754 F.Supp.2d at 644. Significantly, there is **not a single federal case** in the Second Circuit granting even conditional certification of wage and hour claims to HHAs for pre-January 2015 claims.

**B.    Legal Standard for a Class Action.**

"[A] district judge may not certify a class without making a ruling that each Rule 23 requirement is met." *In re Initial Pub. Offering Sec. Litig. ("In re IPO")*, 471 F.3d 24, 27 (2d Cir. 2006); *Severin v. Project OHR, Inc.*, 2012 WL 2357410 * 4 (S.D.N.Y. June 20, 2012). Pursuant to Rule 23(a), Plaintiffs may sue as class representatives only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *see also Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010). "What matters to class certification is not the raising of common

5

'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Severin*, 2012 WL 2357410 * 4 (S.D.N.Y. June 20, 2012). Dissimilarities within the proposed class are what have the potential to impede the generation of common answers. *Id.* If the criteria of Rule 23(a) are satisfied, an action may be maintained as a class action only if it also qualifies under at least one of the categories provided in Rule 23(b). *Brown*, 609 F.3d at 476.

In this case, Plaintiffs seek to certify a class under Rule 23(b)(3), which permits certification "if the questions of law or fact common to class members predominate over any questions affecting only individual members, and ... a class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *see also Brown*, 609 F.3d at 476. "In evaluating a motion for class certification, the district court is required to make a 'definitive assessment of Rule 23 requirements, notwithstanding their overlap with merits issues,' and must resolve material factual disputes relevant to each Rule 23 requirement." *Brown*, 609 F.3d at 476 (*quoting In re IPO*, 471 F.3d at 41). "The Rule 23 requirements must be established by at least a preponderance of the evidence." *Brown*, 609 F.3d at 476. In other words, the district judge must "receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc.*, 546 F.3d 196, 204 (2d Cir. 2008). The burden of proving compliance with all of the requirements of Rule 23 rests with the party moving for certification. *In re IPO*, 471 F.3d at 40.

"As a general matter, the Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Brown*, 609 F.3d at 476. The predominance requirement's "purpose is to ensure that the class will be certified only

when it would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Myers*, 624 F.3d at 547. The predominance requirement is met only "if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Brown*, 609 F.3d at 483. The requirement that the court conduct a "rigorous analysis" to ensure "actual, not presumed conformance" with the Rule 23 requirements applies with "equal force to ... those set forth in Rule 23(b)(3)." *In re IPO*, 471 F.3d at 33 n. 3.

## POINT II

### THE PERTINENT FEDERAL AND LABOR LAW STATUTES AT ISSUE

Plaintiffs seek to represent a class of former and current Americare HHAs who meet the following criteria:

(a)     A New York State Class on behalf of Plaintiffs and similar HHAs who worked for Americare on or after August 16, 2011;

(b)     A FLSA Collective Action on behalf of Plaintiffs and similar HHAs who were not paid full overtime wages under the FLSA on or after January 1, 2015; and

(c)     A New York State Class on behalf of Plaintiff and similar HHAs who did not receive notices pursuant to the WTPA.

Simply put, Plaintiffs seek to represent a class of employees employed since August 2011 who were allegedly not properly paid minimum wage and overtime rates. A detailed analysis of the relevant pertinent statutes and related factors is addressed below.

## A.      The FLSA.

The FLSA requires overtime compensation for hours worked over a 40 in a given workweek "at a rate not less than one and one-half times" the employee's regular rate. 29 U.S.C. § 207(a)(1). However, the FLSA contains an exemption for "any employee employed in

domestic service employment to provide companionship services for individuals who…are unable to care for themselves." 29 U.S.C. § 213(a)(15).

Relevant for purposes of the instant motion, up until October 12, 2015, regardless of the status of the HHA's employer, the FLSA's overtime pay provisions did not apply to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves ...." 29 U.S.C. § 213(a)(15). The FLSA's executing regulations further provide that:

> the term companionship services shall mean those services which provide fellowship, care, and protection for a person who, because of advanced age or physical or mental infirmity, cannot care for his or her own needs. Such services may include household work related to the care of the aged or infirm person such as meal preparation, bed making, washing of clothes, and other similar services. 29 C.F.R. § 552.6.1.

They may also include the performance of general household work: Provided, however, that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked. 29 C.F.R. § 552.6.1.

Accordingly, courts distinguish between household work performed during the course of providing "fellowship, care, and, protection" for a patient and "general household work" unrelated to the provision of care. *See Severin,* 2012 WL 2357410, at *5-6 (S.D.N.Y. June 20, 2012) ("[T]he applicability of the [companionship services] exemption to a particular home attendant is an individualized, fact-specific determination of whether ... the home attendant performed general household work more than 20 percent of the time, and of course any ... household work that is related to the fellowship, care or protection of their client wouldn't negate the exemption."); *Torres v. Ridgewood Bushwick Senior Citizens Homecare Council, Inc.*, 2009 WL 1086935, at *3 (E.D.N.Y. Apr. 22, 2009) (observing that the Regulations expressly

differentiate between "general household work," which is subject to the twenty percent limitation, and "household work related to the care of the aged or infirm person," which is not).

To that end, in a March 16, 1995 Opinion Letter, the United States Department of Labor ("USDOL") Wage and Hour Division opined that "such activities as cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning would be related to personal care of the patient and would be the type of household work that would be exempt work for purposes of section 13(a)(15) of the FLSA." *See* U.S. Dep't of Labor, Opinion Letter on Fair Labor Standards Act (March 16, 1995), 1995 WL 1032475, at *1 ("DOL Letter"). In contrast, the USDOL opined that "activities involving heavy cleaning such as cleaning refrigerators, ovens, trash or garbage removal and cleaning the rest of a 'trashy' house would be general household work or nonexempt work that is subject to the 20 percent time limitation." *Id.*

As of October 13, 2015, the above exemption was amended to exclude HHAs that are employed by agencies such as Americare. (*See* U.S. Dept. of Labor Wage and Hour Division Website Notification, Ex. G).  The new rule was not enforced until November 12, 2015 due to a required 30-day notice and waiting period. (*Id.*).

**B.    New York Labor Law as Pertains to HHAs.**

Pursuant to 12 N.Y.C.R.R. § 142-3.2, an employer shall pay an employee for overtime at a minimum wage rate of one and one-half times the employee's regular rate in the manner and methods provided in and subject to the exemption of sections 7 and 13 of [the FLSA]. 12 N.Y.C.R.R. § 142–3.2. Thus, the NYLL incorporates by reference the FLSA exemptions to determine an employee's proper rate of overtime pay under the NYLL. *See* Counsel Opinion Letter, N.Y. Dep't of Labor, RO–07–0069 Overtime—Companions (July 11, 2007), available at http:// labor.ny.gov/legal/counsel-opinion-letters.shtm.

12 NYCRR § 142–2.2 states "... that all employers shall pay overtime at a rate of one and one-half times the employee's regular rate of pay, unless the employment is covered by one of the FLSA exemptions, in which case the employer shall pay overtime at the rate of one and one-half times the minimum wage." 12 NYCRR § 142–2.2. Consequently, home attendants who fall within the FLSA's companionship services exemption are entitled by New York law to "overtime at a wage rate of one and one-half times the basic minimum hourly rate." 12 N.Y.C.R.R. § 142–3.2. However, for the same reasons as stated above, once the amendment to the FLSA companionship exemption took effect, October 13, 2015, HHAs employed by agencies are entitled to overtime at a wage rate of one and one-half times their regular hourly rate. (*See* Ex. G).

The wage parity minimum wage rate for the relevant time periods was as follows:

- $9.50 per hour for the time period of March 1, 2014 to February 28, 2015;

- $10.00 per hour for the time period of March 1, 2015 to February 28, 2016;

- $10.00 per hour for the time period of March 1, 2016 to February 28, 2017; and

- $11.00 per hour for the time period of December 31, 2016 through December 30, 2017.

(*See* Ex. E).

**1.    The NYDOL's March 11, 2010 Opinion Letter excluding sleep and meal break periods from time worked for HHAs during 24 hour shifts.**

The NYLL requires employers to pay their employees the minimum wage "for each hour worked". NYLL § 652(1). New York law further provides:

> The minimum wage shall be paid for the time an employee is permitted to work, or is required to be available for work at a place prescribed by the employer.... However, a residential employee-one who lives on the premises of the employer-shall not be deemed to be permitted to work or required to be available for work:

(1) during his or her normal sleeping hours solely because such employee is required to be on call during such hours; or

(2) at any other time when he or she is free to leave the place of employment.

12 N.Y.C.R.R. § 142–3.1(b).

On March 11, 2010, the New York Department of Labor ("NYDOL") issued an Opinion Letter (the "NYDOL Opinion Letter") confirming that "live-in employees must be paid not less than for thirteen hours per twenty-four hour period provided that they are afforded at least eight hours for sleep and actually receive five hours of uninterrupted sleep, and that they are afforded three hours for meals," *regardless of whether they are residential employees or not.* (*See* Ex. B). Although several New York State courts have found that the NYDOL Opinion Letter conflicts with the New York Regulations, *see, i.e., Tokhtaman v. Human Care, LLC*, 149 A.D.3d 476, 477, 52 N.Y.S.3d 89 (1st Dep't 2017); *Andryeyeva v. New York Health Care, Inc.*, 153 A.D. 3d 1216, 1218-19, 61 N.Y.S.3d 280 (2d Dep't 2017); *Moreno v. Future Care Health Servs., Inc.*, 153 A.D.3d 1254, 1255-56, 61 N.Y.S.3d 589 (2d Dep't 2017),[2] numerous federal district courts of this Circuit have found that the Opinion Letter is entitled to deference.

In *Severin*, 2012 WL 2357410, at *8 (S.D.N.Y. June 20, 2012), this Court determined that the NYDOL Opinion Letter does not conflict with the New York Regulations. According to *Severin*, the NYDOL Opinion Letter merely interpreted the meaning behind the phrase "available for work at a place prescribed by the employer in the context of home health aides working 24-hour shifts in the home of a client." *Id.* The Court ultimately held that the NYDOL Opinion Letter is neither unreasonable nor irrational. *Id.* at *9.

---

[2] The New York Court of Appeals has not yet addressed the question but is expected to do so relatively soon. Motions are pending before the Second Department seeking leave to appeal to the Court of Appeals.

11

Further, in *Bonn-Wittingham v. Project O.H.R.*, 2017 WL 2178426, at *2-3 (E.D.N.Y. May 17, 2017), the Court also afforded deference to the NYDOL Opinion Letter and explicitly rejected the holding in *Tokhtaman*, stating that the New York Court of Appeals was unlikely to adhere to that line of thinking.

Also, in *De Carrasco v. Life Care Services, Inc.*, 2017 WL 6403521, at *7 (S.D.N.Y. Dec. 15, 2017), the Court expressly joined those district courts rejecting *Tokhtaman*, and found that the NYDOL Opinion Letter is "not in conflict with the regulation; rather it expands upon the Regulation, defining what it means to be 'available to work' […] the Opinion Letter is neither 'unreasonable' nor 'irrational.'" *Id.* (quoting *Severin*, 2012 WL 2357410, at *9) (emphasis in original).

On October 25, 2017, the NYDOL amended the relevant regulation, thus augmenting the line of cases from this Circuit, to add the following:

> Notwithstanding the above, this subdivision shall not be construed to require that the minimum wage be paid for meal periods and sleep times that are excluded from hours worked under the Fair Labor Standards Act of 1938, as amended, in accordance with sections 785.19 and 785.22 of 29 C.F.R. for a home care aide who works a shift of 24 hours or more.

12 N.Y.C.R.R. § 142-2.1(b). According to the DOL, this Amendment was enacted because:

> "The emergency regulation is necessary to preserve the status quo, prevent the collapse of the home care industry, and avoid institutionalizing patients who could be cared for at home, in the face of recent decisions by the State Appellate Divisions ... that treat meal periods and sleep time by home care aides as hours worked for purposes of state (but not federal) minimum wage. [citing *Tokhtaman* and other New York state cases.] ... [T]he Commissioner must take action now to avert an impending crisis. Emergency adoption of this regulation is necessary for the preservation of the public health, safety, and general welfare to ensure that home care aides will be available to provide care for, and avoid the institutionalization of, those who rely on home care. The purpose and intent of this rulemaking is to narrowly codify the Commissioner's longstanding and consistent interpretation that

> compensable hours worked under the State Minimum Wage Law
> do not include meal periods and sleep time of home care aides who
> work shifts of 24 hours or more."

(*See* Ex. K).

In sum, Americare's practice of paying HHAs who work 24-hour shifts for 13 hours of that time is proper. Were this Court to allow Plaintiffs' allegations to be pursued, it would, as recognized by the NYDOL, lead to the "collapse of the home care industry," and crippling liability not just for Americare, but every other home care agency who has employed HHAs in the last six years.

## POINT III

### THE COURT SHOULD DENY PLAINTIFFS' MOTION BECAUSE THE CLAIMS HEREIN ARE ILL-SUITED FOR CLASS-WIDE RESOLUTION

Plaintiff's motion for class and collective certification should be denied because a fact specific individualized analysis of each potential plaintiff's terms and conditions of employment must be undertaken in order to determine whether proper minimum and overtime wages were paid which is ill-suited for class-wide resolution. Plaintiffs ask this Court to do something no federal court in the Second Circuit has ever done: grant conditional certification or class certification of a pre-January 2015 class of HHAs. Their motion should be denied.

**A.  Plaintiffs' Proposed FLSA Collective and New York State Class for HHAs Who Were Allegedly Not Paid Time and One Half Their Regular Hourly Rates on or After January 1, 2015.**

Plaintiffs first seek an Order certifying a FLSA collective and New York State class action of HHAs who were allegedly not paid one and a half times their regular rates from January 1, 2015 to the present date. Plaintiffs claim that Americare maintained a policy to "not pay [HHAs] time and one half their regular hourly rate for hours worked over forty in a week…" (Plfs' Br. at 1).

13

First, despite Plaintiffs' self-serving declarations submitted in support of the instant motion, their payroll records indicate that each was paid one and a half times their regular rate from October 13, 2015 to the present for all hours worked over 40 hours in a given week. (*See* Exs. F, H-I). Only Taveras alleges she worked overtime hours after January 1, 2016, for which she was paid time and one half the New York State minimum wage. (*See* Rand Decl., ¶¶ 14-37). However, these mere 5 pay periods over the course of two years, when compared to the overwhelmingly larger balance of pay periods during which Taveras was properly compensated for overtime at time and one half her regular rate, fall far short of evincing a "common policy" maintained by Defendants of skirting the overtime laws. Thus, from the time period of January 1, 2016 to the present, Plaintiffs have failed to meet their light burden at this stage of demonstrating that they and other potential opt-ins were "victims of a common policy or plan that violated the law." *See Myers*, 624 F.3d at 554-55.

Additionally, Plaintiffs' overtime claims for hours worked between January 1, 2015 to December 31, 2015, are not proper for class-wide resolution. As stated by the DOL, the effective date of the amendment is October 13, 2015, and not January 1, 2015 as Plaintiffs contend.[3] For the short period of time, October 13, 2015 to December 31, 2015, a highly fact-intensive analysis will need to be undertaken by this Court in order to determine whether the HHAs at issue are subject to FLSA's companionship exemption. More specifically, an analysis will have to be made as to whether the particular HHA performed general household work "more than 20 percent of the time, and of course any work, household work, that is related to the fellowship care or protection: of their client that would negate the exemption." *Severin*, 2012 WL 25710 at

---

[3] It is respectfully submitted that this Court is not bound by the decisions in *Hypolite v. Health Care Services of New York, Inc.*, 2017 WL 2712947 (S.D.N.Y.2017) and *De Carrasco v. Life Care Services, Inc.*, 2017 WL 6403521, at *7 (S.D.N.Y. Dec. 15, 2017), which held that the amendment took effect January 1, 2015. Deference should instead be given to the USDOL's notice discussed above stating that the amendment took effect on October 13, 2015 and was not enforced until November 16, 2015. (Ex. G).

*6.  As the court stated in *Cowell v. Utopia Home Care, Inc.,* 2016 WL 4186976 (E.D.N.Y. Aug. 8, 2016), such an analysis:

> would leave the Court having to conduct thousands of mini-trials to resolve the nature of each Plan of Care, the reason for each task assigned in each Plan of Care in order to determine whether it counts for the purpose of the twenty percent calculation, how much time was regularly spent on each task, and then the total amount of time spent on all tasks in order to determine whether each class member is ultimately exempt. Such an outcome is exactly what the collective action mechanism was designed to avoid.

*Cowell*, 2016 WL 4186976 at *7; *see also Hypolite v. Health Care Services of New York, Inc.*, 2017 WL 2712947 * 7 (S.D.N.Y.2017) (Citing to and agreeing with the holding in *Cowell* to the effect that an HHA's claim for unpaid overtime pursuant to the FLSA is not appropriate for collective action because it is highly fact-specific and does not involve similar facts). Thus, as the respective courts held in *Severin*, *Cowell* and *Hypolite,* Plaintiffs' FLSA claims are also not properly suited for a collective action as the exact same individual fact intensive analysis would be required in conjunction with the HHA job description and each client's individual plan of care.

**B.      Plaintiffs' 24 Hour Claims.**

Plaintiffs' second proposed collective/class is on behalf of all HHAs who allegedly worked more than 40 hours per week on or after August 16, 2011, and were not paid time and one half the New York minimum wage. (*See* Plfs' Br. at 2). Specifically, Plaintiffs contend that Defendants maintained an unlawful policy of not paying HHAs who worked a 24-hour Live In shift for the full 24 hours. (*Id.* at 3). In other words, this proposed subclass stands in open defiance to scores of federal cases recognizing the legitimacy of the 13-hour rule described above.

15

In order to satisfy the predominance requirement of Rule 23(b), Plaintiffs "must at this stage show that more 'substantial' aspects of this litigation will be susceptible to generalized proof for all class members than any individualized issues." *Myers*, 624 F.3d at 551. Here, Plaintiffs must show that Defendants improperly excluded time from 24–hour sleep-in shifts to establish an NYLL minimum wage violation. More specifically, Plaintiffs must show that they and others did not in fact receive eight hours of sleep time or five hours of continuous sleep as well as three hours of meal breaks while working Live In shifts. Plaintiffs must also show that if they could not obtain such breaks, they notified Defendants of the issue and no appropriate remedy was implemented. Whether or not an HHA actually received eight hours of sleep time and five hours of continuous sleep as well as three hours for meal breaks and/or notified his or her employer of the issue if he or she could not, and what action if any was taken, is an inherently fact-specific inquiry that is likely to hinge heavily on the characteristics of particular clients to whom sleep-in home attendants were assigned.

Further, courts of this Circuit have consistently held that the NYDOL Opinion Letter is entitled to deference. *See Severin*, 2012 WL 2357410, at *8 (S.D.N.Y. June 20, 2012); *Bonn-Wittingham*, 2017 WL 2178426, at *2-3 (E.D.N.Y. May 17, 2017); *De Carrasco*, 2017 WL 6403521, at *7 (S.D.N.Y. Dec. 15, 2017). As recognized by Judge Forrest in denying certification on this issue in *De Carrasco*, "an employee should only be paid twenty-four hours if she, in fact, is not receiving the appropriate meal and sleep breaks. As a result individualized and not common questions predominate – and thus, class action is not the superior method of adjudication for the 24 Hour Claims." *Id.* at *9.  Therefore, the Court should deny Plaintiffs' motion in this regard.

## POINT IV

### PLAINTIFFS WERE EACH PAID THE PROPER RATES PURSUANT TO THE WAGE PARITY ACT AND WERE PROVIDED THE PROPER NOTICES UNDER THE NEW YORK WAGE THEFT PREVENTION ACT

Simply stated, a review of Plaintiffs' payroll records shows that Americare not only paid Plaintiffs the proper New York Wage Parity Act rates but also changed its practice of paying overtime based on time and a half the New York State minimum wage to time and a half of each employee's regular hourly rate after October 13, 2015. (*See* Exs. F, H-I). In this regard, the rates under the Wage Parity Act from its inception to the present date was as follows:

- $9.50 per hour for the time period of March 1, 2014 to February 28, 2015;

- $10.00 per hour for the time period of March 1, 2015 to February 28, 2016;

- $10.00 per hour for the time period of March 1, 2016 to February 28, 2017; and

- $11.00 per hour for the time period of December 31, 2016 through December 30, 2017.

(*See* Ex. E). A review of each Plaintiff's payroll records show that they were each always paid the proper minimum wage rate based on wage parity.  (*See* Exs. F, H-I).

Finally, the NYWTPA requires ever employer to "provide his or her employee, in writing in English and in the language identified by each employee as the primary language of such employee, at the time of the hiring, and or on before February first of each subsequent year of the employee's employment with the employer, a notice containing the following information: the rate of rates of pay and basis thereof." *See* N.Y.L.L. § 195(1)(a). Here, contrary to the testimony set forth in their respective Declarations, Plaintiffs were in fact provided with appropriate notice pursuant to the New York Wage Theft Prevention Act. (*See* Ex. J) Thus, the claims made by Plaintiffs in this regard are meritless and Plaintiffs' motion should be denied in its entirety.

## POINT V

**PLAINTIFFS FAIL TO MEET THEIR BURDEN OF DEMONSTRATING NUMEROSITY TO OBTAIN CLASS CERTIFICATION UNDER RULE 23**

Pursuant to Rule 23(a), a court must determine whether a proposed class meets four requirements: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. Fed. R. Civ. P. 23(a). Regarding numerosity, this Court has stated that

> "[a]lthough a plaintiff need not present a precise calculation of the number of class members, and it is permissible for the court to reply on reasonable inferences drawn from available facts, the movant 'must show some evidence of or reasonably estimate the number of class members.' '*Where the plaintiff's assertion of numerosity is [based on] pure speculation or bare allegations, the motion for class certification fails.*'"

*Velez v. Majik Cleaning Service, Inc.*, 2005 WL 106895, at * 2 (S.D.N.Y. Jan. 19, 2005) (citing *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *McNeill v. New York City Hous. Auth.*, 719 F.Supp. 233, 252 (S.D.N.Y. 1989)) (quoting *Edge v. C. Tech Collections, Inc.*, 203 F.R.D. 85, 89 (E.D.N.Y. 2001); *Demarco v. Edens*, 390 F.2d 836, 845 (2d Cir. 1968)).

In *Edge*, the Court found that the plaintiff failed to meet his burden of "putting forth some evidence or of reasonably estimating the number of class members" because the plaintiff's allegations of numerosity were "pure speculation unsupported by a single factual allegation[.]" *Edge*, 203 F.R.D. at 89 (Edge speculates that because the defendant is an established collection agency, it has "almost certainly sent out hundreds if not thousands of letters similar to the letter sent to Plaintiff.").

Here, in their purported attempt to meet the first criterion of class action, Plaintiffs allege in conclusory fashion that they each believe there are at least 40 HHAs out there that allegedly suffered from the unlawful policies of Americare. (*See* Heredia Decl., ¶¶ 28-30; Fernandez Decl., ¶¶ 28-30; Taveras Decl., ¶¶ 28-30). These allegations, however, are blatant hearsay and

18

conclusory. For example, Heredia claims that "Defendants hired at least 40 other similar [HHAs] who also were not paid their overtime at the full time and one half rate or at the time and one half the minimum wage rate and also…did not receive the minimum wage rate required by NY Health Care Worker Wage Parity Act. she "spoken to other [HHAs]…who told [her] that they also received only pay for 13 hours of a 24 hour shift even though they worked during the full shift…" (Heredia Decl., ¶ 29). Plaintiffs offer zero factual support for these bald assertions that at least 40 other HHAs that worked overtime during 2015 and were not paid time and one half their regular rate.[4] Therefore, their motion in that regard should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court enter an Order denying Plaintiffs' Motion seeking the Court's certification of a Class and Collective Action.

Respectfully submitted,

*/s/ Kevin J. O'Connor*

Dated: New York, New York          By:_____
       February 16, 2018                    Kevin J. O'Connor
                                  **PECKAR & ABRAMSON, P.C.**
                                  Attorneys for Defendants
                                  1325 Avenue of the Americas, 10th Fl.
                                  New York, NY 10019
                                  P.: 212-382-0909
                                  F.: 212-382-3456

---

[4] Plaintiffs aver that other HHAs worked 24-hour shifts but were not compensated for all 24 hours, however such claims are not proper for class-wide resolution. See Point IIIB, *supra*.