UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------
ESTHEFANY HEREDIA, ESLAINI
FERNANDEZ, and ESTELA TAVERAS,
*individually and on behalf of all other persons
similarly situated*,

                          Plaintiffs,

               -against-

AMERICARE, INC., *et al.*,

                          Defendants.
-----------------------------------------------

17cv6219

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Defendants Americare, Inc. ("Americare") and Martin Kleinman (collectively, "Defendants") move to dismiss this Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and New York state-law action for failure to state a claim. For the following reasons, Defendants' motion is denied.

## BACKGROUND

        The allegations of the Complaint are accepted as true on this motion. Plaintiffs Esthefany Heredia, Eslaini Fernandez, Estela Taveras, and the purported class they seek to represent are home health aides ("HHAs") employed by Americare in New York City. Martin Kleinman is Americare's owner and chief executive officer. Americare provides healthcare services to individuals in their homes.

        Plaintiffs claim: (1) they worked numerous 24-hour shifts, but were paid for only 13 hours per shift; (2) they worked more than 40 hours per week, but were not paid time-and-a-half for overtime work; and (3) they were not paid an extra hour of pay for hours worked over a

"spread" of 10 hours per day. (Compl., ECF No. 1 ("Compl."), ¶¶ 1, 2, 35.)[1] Plaintiffs further allege that they did not receive appropriate FLSA or NYLL notices from Americare. (Compl. ¶¶ 54-55.)

In addition to healthcare services, Plaintiffs performed an array of household tasks, including, inter alia, "cleaning the entire house, cooking[,] and doing laundry" (Compl. ¶ 43); "prepar[ing] three meals a day" (Compl. ¶ 44); "prepar[ing] whatever foods the customer requested" (Compl. ¶ 45); "generally . . . making beds every morning" (Compl. ¶ 46); "dusting, vacuuming, cleaning the bathroom (including the toilet, tub and shower), mopping the kitchen floors, scrubbing the kitchen counters, cleaning the pots and pans, loading/unloading the dishwasher, and taking out the garbage" (Compl. ¶ 47); and "cleaning out the refrigerator and put[ting] away the new groceries at least once every week" (Compl. ¶ 49). Plaintiffs spent "at least 30%" of their time performing "household work." (Compl. ¶ 50.)

During their 24-hour live-in shifts, Plaintiffs stayed at clients' homes overnight, often three to five times per week, despite maintaining their own residences. (Compl. ¶¶ 2, 36, 38, 39.) They did not receive meal breaks and "generally ate while working." (Compl. ¶¶ 36, 41.) Plaintiffs also assert that clients "regularly interrupted" their sleep, "generally at least 3-4 times" per night, preventing them "from getting 5 hours of uninterrupted sleep and/or 8 hours of sleep" in a night. (Compl. ¶ 36.) Despite this, Plaintiffs were paid for only 13 hours, at an hourly rate between $8 and $12, during such shifts. (Compl. ¶¶ 36, 37.) If the $8 to $12 hourly wage were applied to "the entire 24 hours worked," Plaintiffs received less than the minimum wage. (Compl. ¶ 37.) Further, they did not receive an overtime premium for their overtime work. (Compl. ¶ 42.)

---

[1] Defendants do not address claims related to spread-of-hour wages in their briefing.

DISCUSSION

I. Standard

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded facts and draw all reasonable inferences in the light most favorable to the non-moving party. Krassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007). "To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

II. FLSA and the NYLL

A. Overtime Wage Claims

The default rule under FLSA is that an employer must pay an employee "at a rate not less than one and one-half times the regular rate at which [the employee] is employed" for any hours worked over 40 hours in a workweek. 29 U.S.C. § 207. Defendants argue that an exemption to this overtime framework applies, meaning that Americare was not required to pay Plaintiffs at an overtime rate for overtime work.

Prior to January 1, 2015, FLSA contained a companionship services exemption (the "Exemption") to this rule for "any employee employed . . . in domestic service employment to provide companionship services." 29 U.S.C. § 213(a)(15). In many instances, the Exemption applied to HHAs because their work fell within the definition of "companionship services." See Carrasco v. Life Care Servs., Inc., 2017 WL 6403521, at *4 (S.D.N.Y. Dec. 15, 2017); 29 C.F.R. § 552.6. Employers thus did not need to pay HHAs the overtime rate for overtime work.

However, the Exemption defined "companionship services" to include "the performance of general household work . . . [p]rovided . . . that such work is incidental, i.e., does not exceed 20 percent of the total weekly hours worked." Hypolite v. Health Care Servs. of N.Y. Inc., 256 F. Supp. 3d 485, 491 (S.D.N.Y. 2017) (quoting 29 C.F.R. § 552.6). Thus, the Exemption did not apply to HHAs if they performed "general household work" for more than 20% of their weekly hours. See Carrasco, 2017 WL 6403521, at *4; Hypolite, 256 F. Supp. 3d at 491.

Determining whether work is of the "general household" variety requires a "highly fact-specific" analysis. Hypolite, 256 F. Supp. 3d at 494 (quoting Severin v. Project Ohr, Inc., 2012 WL 2357410, at *6 (S.D.N.Y. June 20, 2012)). To make such a determination, judges in this District have relied on the U.S. Department of Labor's ("DOL") 1995 Opinion Letter ("1995 Opinion Letter"), which states that "such activities as cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning would be related to personal care of the patient and would be the type of household work that would be exempt work," while "activities involving heavy cleaning such as cleaning refrigerators, ovens, trash or garbage removal and cleaning the rest of a 'trashy' house would be general household work or nonexempt work that is subject to the 20 percent time limitation." U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter on Fair Labor Standards Act, 1995 WL 1032475, at *1 (1995); see Hypolite, 256 F. Supp. 3d at 494 (applying this standard); Santana v. Brown, 2015 WL 4865311, at *3 (S.D.N.Y. Aug. 12, 2015).

In January 2015, a U.S. Department of Labor interpretive regulation took effect, barring third-party employers, such as Americare, from relying on the Exemption. Carrasco,

2017 WL 6403521, at *4 (quoting 29 C.F.R. § 552.109).[2] Thus, after January 1, 2015, Americare was required to pay the overtime rate for any overtime work by HHAs regardless of the amount of "general household work" they performed. Defendants do not dispute that the new regulations nullified the Exemption for Americare. (Mem. of Law in Supp. of Defs.' Americare and Kleinman's Mot. to Dismiss, ECF No. 31 ("MTD"), at 2, n.1.)

The NYLL incorporates FLSA's companionship exemption, with some variations. See Carrasco, 2017 WL 6403521, at *7. Specifically, the NYLL provides that Exempt employees must be paid 1.5 times the minimum wage, while Non-Exempt employees must be paid 1.5 times their regular pay rate. Severin, 2012 WL 2357410, at *6. Therefore, the NYLL requires that some overtime rate be paid regardless of whether the Exemption applies.

Simply put, under both FLSA and the NYLL, the default rule is that Non-Exempt employees are paid 1.5 times their regular pay rate for overtime work. But under FLSA, Exempt employees who performed such work prior to January 1, 2015 need not be paid any overtime rate. In contrast, under the NYLL, Exempt employees must be paid 1.5 times the minimum wage. However, under either statute, for work performed after January 1, 2015, HHAs must be paid overtime at 1.5 times their regular pay rate.

Thus, Plaintiffs are entitled, at a minimum, to 1.5 times the minimum wage for any overtime hours worked prior to 2015 under the NYLL, and 1.5 times their regular rate for overtime hours worked after January 1, 2015 under either FLSA or the NYLL. Therefore, the issue is not whether Plaintiffs are entitled to an overtime premium for work performed prior to 2015, but rather how that premium should be calculated.

---

[2] Courts in this District agree that 29 C.F.R. § 552.109 "took effect on January 1, 2015." Shillingford v. Astra Home Care, Inc., 293 F. Supp. 3d 401, 409 (S.D.N.Y. 2018); Carrasco, 2017 WL 6403521, at *5; Hypolite, 256 F. Supp. 3d at 494.

5

Plaintiffs allege they performed various types of housework which took up at least 30% of their time. (Compl. ¶¶ 43-50.)[3] Some of that work fits within the framework described in the 1995 Opinion Letter. For instance, Plaintiffs "clean[ed] the entire house" (Compl. ¶ 43), took "out the garbage" (Compl. ¶ 47), and "clean[ed] out the refrigerator" (Compl. ¶ 49). See 1995 Opinion Letter, 1995 WL 1032475, at *1 ("[A]ctivities involving heavy cleaning such as cleaning refrigerators, ovens, trash or garbage removal and cleaning the rest of a 'trashy' house would be general household work . . . ."). Drawing all inferences in the light most favorable to Plaintiffs, this is sufficient. Krassner, 496 F.3d at 237. Defendants' motion to dismiss the FLSA and NYLL overtime claims is therefore denied.

B. 24-Hour Shift Claims

Plaintiffs allege they worked numerous 24-hour shifts, but were only paid for 13 hours, and did not get five hours of uninterrupted sleep or meal breaks during those shifts. (Compl. ¶ 1.) Defendants contend that payment for 13 hours in a 24-hour shift was lawful. (MTD at 10-14.) Under FLSA, "an employer can deduct up to eleven hours from a twenty-four hour shift by deducting eight hours of sleep time (so long as five of those hours are uninterrupted), and up to three one-hour meal breaks." Carrasco, 2017 WL 6403521, at *5 (citing 29 C.F.R. § 785.22; 553.222(c)).

The NYLL is more nuanced. Prior to October 2017, New York State Department of Labor ("NYDOL") regulations stated that "minimum wage shall be paid for the time an employee is permitted to work" but that "a residential employee—one who lives on the premises

---

[3] Defendants' arguments that Plaintiffs fail to state a claim because they fail "to plead . . . respective hourly rates of pay, how much they were actually paid, how many hours they worked, and how the law was even violated" is unavailing. (MTD at 9.) Plaintiffs allege they were paid an hourly rate between $8 and $12 (Compl. ¶ 37), worked between three and five 24-hour shifts per week (which is more than 40 hours in a week) (Compl. ¶ 37), and worked more than 40 hours per week, but were not paid time-and-a-half at either the minimum wage or their regular hourly rate for overtime work (Compl. ¶ 2).

of the employer—shall not be deemed to be permitted to work or required to be available for work: (1) during his or her normal sleeping hours solely because he is required to be on call during such hours or (2) at any other time when . . . she is free to leave the place of employment." Carrasco, 2017 WL 6403521, at *5 (quoting N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1(b)).

But in 2010, the NYDOL issued an opinion letter ("NYDOL Opinion Letter") tracking FLSA and stating that "'live-in employees . . . must be paid not less than for thirteen hours per twenty-four hour period provided that they are afforded at least eight hours for sleep and actually receive five hours of uninterrupted sleep, and that they are afforded three hours for meals,' regardless of whether they are residential employees or not." Carrasco, 2017 WL 6403521, at *6 (quoting N.Y. State Dep't of Labor, Op. No. RO-09-0169, at 4 (Mar. 11, 2010)). However, several New York appellate courts have declined to afford deference to the NYDOL Opinion Letter. See, e.g., Tokhtaman v. Human Care, LLC, 52 N.Y.S.3d 89, 91 (N.Y. App. Div. 2017); see also Carrasco, 2017 WL 6403521, at *6 (discussing Appellate Division decisions).

Conversely, judges in this District defer to the NYDOL Opinion Letter. See Shillingford, 293 F. Supp. 3d at 417; Carrasco, 2017 WL 6403521, at *6; Severin, 2012 WL 2357410, at *8. This approach is consistent with the NYDOL's October 2017 regulation amendments that supplemented the 24-hour shift regulation, stating, "Notwithstanding the above, this subdivision shall not be construed to require that the minimum wage be paid for meal periods and sleep times that are excluded from hours worked under [FLSA] . . . for a home care aide who works a shift of 24 hours or more." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.1. This Court adopts the reasoning of the judges in this District holding that the NYDOL Opinion Letter should be accorded deference and applied to work performed after it was issued in 2010.

7

See Entergy Nuclear Operations, Inc. v. N.Y. State Dep't of State, 66 N.E.3d 1062, 1067 (N.Y. 2016) ("[T]he construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld.").

However, Plaintiffs navigate this minefield by alleging that they "worked numerous 24 hour shifts for which they were illegally paid for only 13 of the 24 hours worked, as they did not get meal breaks and did not get 5 hours of uninterrupted sleep and a full 8 hours of sleep during the 24 hour shifts." (Compl. ¶ 1.) Plaintiffs also allege "that their sleep was regularly interrupted generally at least 3-4 times by the client throughout the night which prevented them from getting 5 hours of uninterrupted sleep," (Compl. ¶ 36), and that they "did not receive a meal break and generally ate while working" (Compl. ¶ 41). These allegations state a plausible claim for relief. See Iqbal, 556 U.S. at 678. That Plaintiffs do not specifically plead each instance their sleep and meals were interrupted is immaterial. Therefore, Defendants' motion as to the 24-hour shift claims is also denied.

C. Statute of Limitations

Defendants seek dismissal of all FLSA claims accruing before August 15, 2014 as time-barred. "The statute of limitations for a[] FLSA claim is two years, unless the violation is willful, in which case it is three years." Kuebel v. Black & Decker Inc., 643 F.3d 352, 366 (2d Cir. 2011) (internal quotation marks omitted); see also 29 U.S.C. § 255(a). FLSA claims accrue "on the next regular payday following the work period when services are rendered." Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 198 (2d Cir. 2013). Claims are considered commenced on the date they are filed. See 29 U.S.C. § 256.

"An employer willfully violates . . . FLSA when it either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the Act." Kuebel, 643 F.3d at

8

366 (internal quotation marks omitted). Simply put, "employers commit a willful violation when (1) they know that their business is subject to FLSA and (2) their practices do not conform to FLSA requirements." Russo v. Trifari, Krussman & Fishel, Inc., 837 F.2d 40, 44 (2d Cir. 1988) (internal quotation marks omitted). But, "[a]s a general rule, the question of willfulness [in the FLSA context] is properly left to the jury." Park v. Seoul Broad. Sys. Co., 2008 WL 619034, at *6 (S.D.N.Y. Mar. 6, 2008). Thus, whether Defendants' conduct was in fact willful can only be determined on a more fulsome record. See Moran v. GTL Constr., LLC, 2007 WL 2142343, at *4 (S.D.N.Y. July 24, 2007); Davis v. Lenox Hill Hosp., 2004 WL 1926086, at *7 (S.D.N.Y. Aug. 31, 2004).

Irrespective of willfulness, Plaintiffs "seek to prosecute their FLSA claims . . . on behalf of all persons who are or were formerly employed by Defendant at any time since August 16, 2011 (time tolled by failure to post notice)." (Compl. ¶ 15.) To buttress this contention, Plaintiffs allege that "Defendant failed to post or keep posted a notice explaining the minimum wages and overtime pay rights provided by . . . FLSA in any area where Plaintiffs [we]re employed." (Compl. ¶ 19(d).) This appears to be an assertion that Plaintiffs' FLSA claims should be equitably tolled.

"The failure to provide an employee the notice required by . . . FLSA may be a sufficient basis for tolling, 'but only if that failure contributed to the employee's unawareness of [his or her] rights.'" Perez v. City of N.Y., 2017 WL 4326105, at *8 (S.D.N.Y. Sept. 27, 2017). Whether equitable tolling is warranted here is a highly factual question and cannot be determined on a motion to dismiss. See Zhongwei Zhou v. Wu, 2015 WL 925962, at *4 (S.D.N.Y. Mar. 3, 2015); Upadhyay v. Sethi, 848 F. Supp. 2d 439, 445 (S.D.N.Y. 2012).

9

III. <u>Wage Parity Act</u>

Defendants argue that the Wage Parity Act claims fail because (1) no wage violation exists, (2) the allegations are conclusory, and (3) Plaintiffs fail to properly allege third-party beneficiary status. The first argument is unavailing given this Court's denial of Defendants' motion to dismiss the NYLL and FLSA claims.

The second argument is also unpersuasive. The Wage Parity Act, codified as New York Public Health Law § 3614–c, "sets the minimum amount of total compensation that employers must pay home care aides in order to receive Medicaid reimbursements for reimbursable care provided in New York City and Westchester, Suffolk, and Nassau Counties." <u>Concerned Home Care Providers, Inc. v. Cuomo</u>, 783 F.3d 77, 80 (2d Cir. 2015). It conditions "Medicaid reimbursement . . . upon a home health care agency's certification that the home care aides who render the services are paid a minimum wage. This minimum wage is based on New York City's Living Wage Law, meaning it is actually higher than the general minimum wage." <u>Rodriguez v. Avondale Care Grp., LLC</u>, 2018 WL 1582433, at *9 (S.D.N.Y. Mar. 27, 2018) (internal quotation marks and citations omitted). Plaintiffs' claims are based on unpaid wages and they assert that they were not paid the general minimum wage. (<u>See, e.g.</u>, Compl. ¶ 4.) The Complaint sufficiently pleads that Plaintiffs were not paid "the minimum amount of total compensation" as set forth in the Wage Parity Act. <u>Concerned Home Care</u>, 783 F.3d at 80. And Plaintiffs' allegations that Defendants breached an "agreement to pay Plaintiffs . . . wages as required by the NY Health Care Worker Wage Parity Act," which "was made for the benefit of" HHAs, is sufficient to withstand a motion to dismiss. (Compl. ¶¶ 75, 76.)

Defendants' third-party beneficiary argument also fails. An HHA has "standing to sue as a third-party beneficiary of the alleged contracts requiring defendants to pay plaintiff

certain wages pursuant to Public Health Law § 3614–c." Tokhtaman, 52 N.Y.S.2d at 91 (internal citations omitted). The First Department has held that "citation to Public Health Law § 3614–c ma[de] clear that the contracts referenced are those required for every company providing health care services that seek reimbursement from Medicaid or Medicare." Tokhtaman, 52 N.Y.S.2d at 91-92 (internal citations omitted). That is what Plaintiffs allege here. (See Compl. ¶¶ 51, 74-77.)

Moreover, the Wage Parity Act was intended to benefit HHAs directly, as it sets a wage above the general minimum wage specifically for HHAs. See Fata v. S. A. Healy Co., 46 N.E.2d 339, 341 (N.Y. 1943) ("The statutory mandate that a contractor must pay laborers upon public works wages at least at the prevailing rate was intended for the direct benefit of laborers as well as for the indirect benefit of the State, municipal corporation or public agency which is the other party to the contract."). See also Cox v. NAP Constr. Co., Inc., 891 N.E.2d 271, 274 (N.Y. 2008) ("under long-settled rules plaintiffs would be third-party beneficiaries of those promises" where employer put language agreeing to pay prevailing wages in a contract in order to comply with a statute).

Therefore, Defendants' motion to dismiss Claims III, IV, and V is denied.

IV. Breach of Contract

Plaintiffs further assert a breach of contract claim related to unpaid wages. (Compl. ¶¶ 87-90.) Defendants argue that this claim is conclusory. "Under New York law, the elements of a cause of action for breach of contract are (1) the existence of a contract; (2) performance of the contract by one party; (3) breach by the other party; and (4) damages suffered as a result of the breach." Transcience Corp. v. Big Time Toys, LLC, 50 F. Supp. 3d 441, 450 (S.D.N.Y. 2014) (citing Beautiful Jewellers Private Ltd. v. Tiffany & Co., 438 F. App'x 20, 21-

11

22 (2d Cir. 2011)).  Here, Plaintiffs allege that they "entered into contracts with the Defendant under which Plaintiffs . . . were to provide home health aide and maid services and Defendants were required to pay wages as required by law." (Compl. ¶ 88.)  And the Complaint pleads that (1) Plaintiffs performed work as HHAs for Americare, (2) Defendants failed to pay certain wages, and (3) Plaintiffs are owed unpaid wages. (<u>See generally</u> Compl.)  These allegations are sufficient to plead breach of contract.

<u>CONCLUSION</u>

For the foregoing reasons, Defendants' motion to dismiss is denied.  The Clerk of Court is directed to terminate the motion pending at ECF No. 29.  The parties are directed to submit a proposed discovery schedule by May 30, 2018 for this Court's consideration.

Dated: May 23, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.