UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------

ESTHEFANY HEREDIA, ESLAINI
FERNANDEZ, and ESTELA TAVERAS,
*individually and on behalf of all other persons similarly situated*,

               Plaintiffs,

-against-

AMERICARE, INC., *et al.*,

               Defendants.

---------------------------------------------------

17cv6219

OPINION & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiffs Esthefany Heredia, Eslaini Fernandez, and Estela Taveras move to certify a Fair Labor Standards Act ("FLSA") collective and Rule 23 classes. For the following reasons, Plaintiffs' motion to certify a FLSA collective is granted and their motion to certify Rule 23 classes is denied.

## BACKGROUND

        Plaintiffs and the classes they seek to represent are home health aides ("HHAs") employed by Defendant Americare, Inc. ("Americare") in New York City. Defendant Martin Kleinman is Americare's owner and chief executive officer. Americare provides healthcare services to individuals in their homes.

        Plaintiffs claim they (1) worked numerous 24-hour shifts, but were paid for only 13 hours per shift; (2) worked more than 40 hours per week, but were not paid time-and-a-half for any overtime work; and (3) were not paid an extra hour of pay for hours worked over a "spread" of 10 hours per day. (Compl., ECF No. 1 ("Compl."), ¶¶ 1, 2, 35.) As such, they seek

unpaid minimum wages, overtime wages, and spread-of-hour wages.  (Compl. ¶¶ 3-4.)  Plaintiffs further allege that they did not receive appropriate FLSA or NYLL notices from Americare.  (Compl. ¶¶ 54, 55.)

Plaintiffs seek to certify (1) a FLSA collective and a Rule 23 class of "[e]mployees who were not paid time and one half their regular hourly rates [for overtime work performed] on or after January 1, 2015, the effective date of the new regulations"; (2) a Rule 23 class of all HHAs who worked more than 40 hours per week on or after August 16, 2011 and were not paid time-and-a-half at the New York minimum wage rate for overtime work in violation of the NYLL; and (3) a Rule 23 class of employees who did not receive proper Wage Theft Prevention Act ("WTPA") notices.  (See Pls.' Mem. of Law in Supp. of Mot. for Certification of Class and Collective Action, ECF No. 28 ("Mot."), at 1-4.)  Plaintiffs allege that "there are at least 40 members of the [putative c]lass."  (Compl. ¶ 16.)

DISCUSSION

I.   FLSA Collective Action

Under 29 U.S.C. § 216(b), plaintiffs may bring FLSA collective actions that allow employees to sue on behalf of themselves and other "similarly situated" employees, provided those employees "affirmatively consent to join" the collective action.  See Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 243-44 (2d Cir. 2011) (quoting 29 U.S.C. § 216(b)).  Unlike class actions, FLSA collective actions need not satisfy the requirements of Rule 23.  See Shillingford v. Astra Home Care, Inc., 293 F. Supp. 3d 401, 407 (S.D.N.Y. 2018).  Rather, courts have discretion to implement § 216(b) by facilitating notice to potential plaintiffs through a two-step process.  Myers v. Hertz Corp., 624 F.3d 537, 554 (2d Cir. 2010).  "Orders authorizing notice are often referred to as orders 'certifying' a collective action, even though . . . FLSA does

not contain a certification requirement." Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010).  Thus, "certifying" a collective action means only that this Court exercises its "discretionary power . . . to facilitate the sending of notice to potential class members." Myers, 624 F.2d at 555 n.10.

"At the first step—conditional certification—the Court simply authorizes notice to be sent to potential similarly situated plaintiffs.  Plaintiffs bear the light burden of making a 'modest factual showing' that the named initial plaintiffs and the potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law.'"  Carrasco v. Life Care Servs., Inc., 2017 WL 6403521, at *2 (S.D.N.Y. Dec. 15, 2017) (quoting Myers, 624 F.3d at 555).  Therefore, "the Court must merely find some identifiable factual nexus which binds the named plaintiffs and potential class members together as victims of a particular practice." Alvarez v. Schnipper Rests. LLC, 2017 WL 6375793, at *2 (S.D.N.Y. Dec. 12, 2017) (quotation marks omitted).  Further, "[i]n exercising its discretion at the conditional certification stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations."  Hypolite v. Health Care Servs. of N.Y. Inc., 256 F. Supp. 3d 485, 489 (S.D.N.Y. 2017) (citations and quotation marks omitted).

Although a "modest factual showing" cannot be satisfied with mere "unsupported assertions," the standard of proof is "low . . . because the purpose of this first stage is merely to determine whether 'similarly situated' plaintiffs do in fact exist."  Myers, 624 F.3d at 555 (citations and quotation marks omitted).  Thus, "[i]f the plaintiffs demonstrate that 'similarly situated' employees exist, the Court should conditionally certify the class, order that appropriate notice be given to putative class members, and the action should continue as a collective action throughout the discovery process."  Hypolite, 256 F. Supp. 3d at 489 (quotations marks omitted).

"At the second step, defendants have the opportunity to move for decertification if, after additional discovery, the record shows that the opt-in plaintiffs are not, in fact, similarly situated to the named plaintiffs." Carrasco, 2017 WL 6403521, at *2; see Myers, 624 F.3d at 555.

Here, Plaintiffs demonstrate an "identifiable factual nexus" between the named Plaintiffs and proposed collective members. See Alvarez, 2017 WL 6375793, at *2. Through their affidavits and exhibits, Plaintiffs show that the three named Plaintiffs and at least 40 similarly situated HHAs were neither paid the minimum wage nor the overtime rate for overtime work. (See Decl. of Will C. Rand, Esq. in Supp. of Mot. for Class Certification & Collective Certification, ECF No. 24 ("Rand Decl."), Exs. E-G; Decl. of Esthefany Heredia, ECF No. 25 ("Heredia Decl."), ¶ 24 & Ex. A; Compl. ¶¶ 1-2, 35-37.) See Carrasco, 2017 WL 6403521, at *2 ("The burden may be satisfied through the pleadings and affidavits alone."). Judges in this District have certified nearly identical collectives. See Shillingford, 293 F. Supp. 3d at 409 (certifying collective of HHAs not paid proper overtime wages after January 1, 2015); Carrasco, 2017 WL 6403521, at *8 (certifying collective of HHAs "[n]ot [p]aid [t]ime and [o]ne [h]alf for [o]vertime after January 1, 2015"); Hypolite, 256 F. Supp. 3d at 496 (certifying collective of HHAs not paid proper overtime wages from January 1, 2015 to October 2015).

Thus, this Court conditionally certifies a FLSA collective of "[e]mployees who were not paid time and one half their regular hourly rates [for overtime work performed] on or after January 1, 2015." (Mot. at 1.)

II. Rule 23 Class Action

Plaintiffs seek to certify Rule 23(b)(3) classes of (1) New York state "[e]mployees who were not paid time and one half their regular hourly rates [for overtime work performed] on or after January 1, 2015, the effective date of the new regulations"; (2) HHAs who worked more

than 40 hours per week on or after August 16, 2011 and were not paid time-and-a-half the New York minimum wage for overtime work in violation of the NYLL; and (3) New York state employees who did not receive proper WTPA notices. (Mot. at 1-4, 17.) When considering a motion for class certification, courts accept the allegations in the complaint as true. See Shelter Realty Corp. v. Allied Maint. Corp., 574 F.2d 656, 661 n.15 (2d Cir. 1978) ("[I]t is proper to accept the complaint allegations as true in a class certification motion."). And a court may consider material outside the pleadings in determining the appropriateness of class certification. See Kaczmarek v. Int'l Bus. Machs. Corp., 186 F.R.D. 307, 311 (S.D.N.Y. 1999) (citing Sirota v. Solitron Devices, Inc., 673 F.2d 566, 571 (2d Cir. 1982)).

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." Myers, 624 F.3d at 547. Further, a class action "may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982). "[F]ailure to prove any element [of Rule 23] precludes certification." Ansari v. N.Y. Univ., 179 F.R.D. 112, 114 (S.D.N.Y. 1998).

Rule 23(a) imposes four requirements for class certification: (1) the class must be "so numerous that joinder of all members is impracticable"; (2) there must be common "questions of law or fact" to the class; (3) the representative party's claims must be "typical of the claims or defenses of the class"; and (4) the representative party must be able to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Further, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only class members," making a class action "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

5

For numerosity, "impracticable" does not mean "impossible," and a precise enumeration or identification of the class members is not required. Robidoux v. Celani, 987 F.2d 931, 935 (2d Cir. 1993). Numerosity "is presumed when a putative class has forty or more members." Shahriar, 659 F.3d at 252. For commonality and typicality, the requirements tend to merge and thus require similar analyses. See Marisol A. v. Giuliani, 126 F.3d 372, 376 (2d Cir. 1997). Specifically, the commonality requirement is met when claims share a common question of law or fact, see Marisol A., 126 F.3d at 376; In re Agent Orange Prod. Liab. Litig., 818 F.2d 145, 166-67 (2d Cir. 1987), while the "typicality requirement is satisfied when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability . . . irrespective of minor variations in the fact patterns underlying the individual claims," Robidoux, 987 F.2d at 936-37. For adequacy of representation, the analysis entails two factors: (1) class counsel must be qualified, experienced, and generally able to conduct the litigation, and (2) the interests of the named plaintiffs cannot be antagonistic to those of the remainder of the class. See Marisol A., 126 F.3d at 378; In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 290 (2d Cir. 1992).

Finally, "[c]lass-wide issues predominate if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." Moore v. PaineWebber, Inc., 306 F.3d 1247, 1252 (2d Cir. 2002). Rule 23(b)'s predominance test is "even more demanding" than the commonality test under Rule 23(a). See Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013). Thus, courts are required "to take a 'close look' at whether common questions predominate over individual ones." Comcast, 569 U.S. at 33 (quoting Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 615 (1997)).

A. Post-January 1, 2015 Class

Plaintiffs attempt to transform their individual claims into class-action claims through highly tailored class descriptions. "What matters to class certification . . . is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (quotation marks omitted) (emphasis in original).

It is true that a U.S. Department of Labor interpretive regulation took effect January 1, 2015, which required HHAs to be paid at time-and-a-half their regular pay rate for any overtime work performed on or after January 1, 2015. See 29 C.F.R. § 552.109; Shillingford, 293 F. Supp. 3d at 409; Carrasco, 2017 WL 6403521, at *5; Hypolite, 256 F. Supp. 3d at 494. This settles the issue on the proper overtime rate for HHAs after January 1, 2015. Plaintiffs also demonstrate that at least 40 Americare HHAs were not paid the proper rate, (see Rand Decl., Exs. E-G; Heredia Decl. ¶ 24 & Ex. A), and that the named Plaintiffs "spoke[] to other" HHAs and confirmed Americare's failure to pay the overtime rate, (see, e.g., Heredia Decl. ¶ 29). Americare acknowledges that it did not pay the proper overtime rate from at least January 1, 2015 through October 13, 2015. (Opp. at 17; Decl. of David Helfgott in Opp. to Pls.' Mot. for Class & Collective Certification, ECF No. 35, ¶¶ 21-22).)

While Plaintiffs frame the class definition in terms of their overtime claims, they bring a potpourri of other wage claims, including those for unpaid minimum wage and unpaid wages for all 24 hours of their 24-hour shifts. (Compl. ¶¶ 3-4.) Whether a 24-hour shift consists of 13 hours or 24 hours is integral to whether Americare properly paid the overtime rate or

7

minimum wage. And that analysis turns on whether an employee received eight hours of sleep per night (as long as five of those hours were uninterrupted) and three hours of meal breaks. See Carrasco, 2017 WL 6403521, at *5. This requires a tailored review of each Plaintiff's meal breaks and hours slept, varying down to the particular shift. See Carrasco, 2017 WL 6403521, at *5 (denying class certification on 24-hour claims because they turn on whether employees received sleep and breaks); see Shillingford, 293 F. Supp. 3d at 417 (holding that common issues of law and fact cannot predominate on 24-hour shift claims). For instance, an HHA may have been paid the proper minimum wage for four 24-hour shifts if each shift counted as 13 hours, but her pay would fall well below minimum wage if that shift were counted as 24 hours. That determination requires an analysis of the breaks the employee took during each shift. Plaintiffs cannot ignore the need for these individualized assessments. See Shillingford, 293 F. Supp. 3d at 418 (denying class certification for "overtime pay violations under the NYLL" because a liability determination turned on whether HHAs were residential employees and, "to an extent, on the number of breaks an aide received and for how long"). As a result, common questions do not predominate.

    B. Post-August 16, 2011 Class

Plaintiffs argue that they were not paid time-and-a-half at the minimum wage for overtime work performed from August 16, 2011 through 2014 because Defendants failed to include all 24 hours of 24-hour shifts in their calculation of overtime. (Mot. at 2-3; Compl. ¶¶ 1-2.) The thrust of these claims hinges on whether Americare was required to pay HHAs for all 24 hours of 24-hour shifts. For the reasons stated above, common questions do not predominate on this issue. See Carrasco, 2017 WL 6403521, at *5 (denying class certification on 24-hour claims because they depend on whether employees received sleep and meal breaks); see Shillingford,

293 F. Supp. 3d at 417 (holding that common issues of law and fact did not predominate on 24-hour shift claims).

Although the inquiry does not end there, common issues again do not predominate. Plaintiffs allege they worked three to five 24-hour shifts per week. (Compl. ¶ 37.) For weeks in which they worked four or five shifts, they necessarily worked more than 40 hours, regardless of whether a 24-hour shift is considered 13 or 24 hours of work. However, the number of overtime hours each HHA worked still turns on the number of compensable hours in a 24-hour shift. Further, the NYLL provides that employees subject to FLSA's companionship exemption must be paid 1.5 times the minimum wage, while employees not subject to FLSA's companionship exemption must be paid 1.5 times their regular pay rate. See Severin v. Project Ohr, Inc., 2012 WL 2357410, at *6 (S.D.N.Y. June 20, 2012). Thus, each Plaintiff's overtime claim depends on the type of work they performed—a "highly fact specific" question. Hypolite, 256 F. Supp. 3d at 494; Severin, 2012 WL 2357410, at *6.

C. WTPA Notice Class

Rule 23 requires a "searching inquiry," and "Plaintiff bears a heavy burden to satisfy the rigorous analysis required at the class certification stage." Shillingford, 293 F. Supp. 3d at 418. Here, affidavits by the named Plaintiffs are the only evidence that Americare had a policy of failing to provide proper WTPA notice. (See, e.g., Heredia Decl. ¶ 32.) But the averments are conclusory: "I and similar home health aide/maid employees of Defendant were not specifically correctly notified by Defendants." (Heredia Decl. ¶ 32.) And judges in this District have denied class certification for identical classes where plaintiffs provided "scant record evidence." Shillingford, 293 F. Supp. 3d at 412 (denying class certification for HHAs who did not receive WTPA notices because there was "scant record evidence"); Carrasco, 2017

9

WL 6403521, at *10 (denying class certification for HHAs who did not receive WTPA notices because Plaintiffs failed to show that "WTPA notices were incorrectly provided as a policy"). Accordingly, Plaintiffs' motion to certify a class of employees who did not receive proper WTPA notices is denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to certify Rule 23 classes and a FLSA collective is granted in part and denied in part. This Court certifies a FLSA collective of Americare employees who were not paid time-and-a-half at their regular hourly rates on or after January 1, 2015. Plaintiffs' motion to certify Rule 23 classes is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 23.

Dated: May 23, 2018
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.