**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ESTHEFANY HEREDIA, ESLAINI FERNANDEZ, and ESTELA TAVERAS, Individually and on Behalf of All Other Persons Similarly Situated,<br><br>                    Plaintiffs,<br>     -against-<br><br>AMERICARE, INC., MARTIN KLEINMAN and JOHN DOES #1-10,<br><br>                  Defendants. | Civil Action No.: 17-cv-06219 |

---

**DEFENDANTS' MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

---

**PECKAR & ABRAMSON, P.C.**
1325 Avenue of the Americas, 10th Floor
New York, NY 10019
Tel.: (212) 382-0909
*Attorneys for Defendants,*
*Americare, Inc. and Martin Kleinman*

<u>On the Brief</u>:
Kevin J. O'Connor, Esq.

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ........................................................................................... 3

ARGUMENT ............................................................................................................... 4

POINT I ........................................................................................................... 4

DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON
PLAINTIFFS' MINIMUM WAGE AND OVERTIME CLAIMS BECAUSE
THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AS TO
WHETHER PLAINTIFFS NOTIFIED AMERICARE OF ANY ALLEGED
INSUFFICIENT SLEEP OR MEAL BREAKS ................................................ 4

A.   The Applicable Standard .................................................................... 4

B.   Plaintiffs are not Entitled to Overtime. ............................................. 5

C.   The Plaintiffs were paid all of their Minimum Wages. ..................... 8

POINT II ....................................................................................................... 14

THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO THE
EXISTENCE OF ANY RELEVANT CONTRACTS AND, AS SUCH,
DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE
BREACH OF CONTRACT CLAIMS ........................................................... 14

A.   Plaintiffs did not enter into Contracts with Defendants. ................. 14

B.   No Contracts exist between Defendants and New York State. ......... 15

POINT III ...................................................................................................... 17

PLAINTIFFS' WTPA CLAIMS MUST BE DISMISSED AS A MATTER OF
LAW BECAUSE PLAINTIFFS WERE HIRED *BEFORE* THE STATUTE
WENT INTO EFFECT AND BECAUSE PLAINTIFFS EACH RECEIVED PAY
RATE NOTICES AND PAY STUBS .............................................................. 17

A.   Plaintiffs received Wage Notices. .................................................... 17

B.   Plaintiffs received Pay Statements. .................................................. 18

i

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

POINT IV ................................................................................................................. 19

PLAINTIFFS' CLAIMS AGAINST KLEINMAN MUST BE DISMISSED AS A
MATTER OF LAW BECAUSE HE DID NOT SO CONTROL THE
PLAINTIFFS' EMPLOYMENT THAT THE "ECONOMIC REALITY" IS
THAT HE IS PLAINTIFFS' EMPLOYER .................................................................... 19

CONCLUSION ........................................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alicea v New York*,
   145 AD2d 315 (1st Dept 1988)..............................................................................16

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)........................................................................................4, 5

*Anderson v. Mt. Clemens Pottery Co.*,
   328 U.S. 680 (1946)..........................................................................................13

*Andryeyeva v. New York Health Care, Inc.*,
   33 N.Y.3d 152 (2019) .........................................................................................9

*Baltierra v. Advantage Pest Control Co.*,
   2015 U.S. Dist. LEXIS 124961, 2015 WL 5474093, at *10-11 ..............................18

*Bayerische Landesbank, NY Branch v. Aladdin Capital Mgmt., LLC*,
   692 F.3d 42 (2d Cir. 2012).................................................................................15

*Bonn-Wittingham v. Project OHR, Inc.*,
   No. 18-1781, 2019 WL 6273405 (2d Cir. Nov. 25, 2019) ....................................6

*Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*,
   769 F.2d 919 (2d Cir. 1985)...............................................................................12

*Cazarez v Atl. Farm & Food, Inc.*,
   2017 US Dist LEXIS 76785 (EDNY May 17, 2017, No. 15 CV 2666
   (CBA)(RML)) ...................................................................................................18

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)............................................................................................4

*Cowell v. Utopia Home Care, Inc.*,
   No. 14-cv-736 (LDW)(SIL), 2016 WL 4186976 (E.D.N.Y. Aug. 8, 2016)............6

*De Carrasco v Life Care Servs., Inc.*,
   2017 US Dist LEXIS 206682 (SDNY Dec. 15, 2017, No. 17-cv-5617 (KBF)).......8

*Devany v. Brockway Dev., LLC*,
   72 A.D.3d 1008, 900 N.Y.S.2d 329.....................................................................14

*Durso v. Baisch*,
   37 A.D.3d 646, 830 N.Y.S.2d 327.......................................................................14

*EEOC v Bloomberg L.P.*,
 967 F Supp 2d 816 (SDNY 2013) ..................................................5

*Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*,
 66 N.Y.2d 38 (1985) ..................................................15

*Garcia v Chirping Chicken NYC, Inc.*,
 2016 US Dist LEXIS 32750 (EDNY Mar. 11, 2016, No. 15 CV 2335 (JBW)
 (CLP)) ..................................................19

*Graziadio v. Culinary Inst. of Am.*,
 817 F.3d 415 (2d Cir. 2016)..................................................19

*Guaman v. Krill Contracting*,
 No. 14-CV-4242 (FB) (RER), 2015 U.S. Dist. LEXIS 74567, 2015 WL
 3620364 (E.D.N.Y. June 9, 2015) ..................................................17

*Irizarry v. Catsimatidis*,
 722 F.3d 99 (2d Cir. 2013)..................................................19

*Joza v. WW JFK LLC*,
 2010 U.S. Dist. LEXIS 94419 (E.D.N.Y. Sept. 9, 2010)..................................................13

*Kindle v Dejana*,
 238 F Supp 3d 353 (EDNY 2017) ..................................................12

*Kubel v. Black & Decker Inc.*,
 643 F.3d 352 (2d Cir. 2011)..................................................13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986)..................................................4

*Rodriguez v. Almighty Cleaning, Inc.*,
 784 F.Supp.2d 114 (E.D.N.Y. 2011) ..................................................6

*Salinas v. Starjem Rest. Corp.*,
 123 F. Supp. 3d 442, 2015 WL 4757618 (S.D.N.Y. 2015) ..................................................18

*Scotto v. Brady*,
 410 Fed. Appx. 355 (2d Cir. 2010)..................................................12

*Severin v. Project OHR, Inc.*,
 No. 10-cv-9696 (DLC), 2012 WL 2357410 (S.D.N.Y. June 20, 2012) ..................................................6

*Subaru Distribs. Corp. v. Subaru of Am., Inc.*,
 425 F.3d 119 (2d Cir. 2005)..................................................15

*VFS Fin., Inc. v Falcon Fifty LLC*,
  17 F Supp 3d 372 (SDNY 2014) ...........................................................................14

*Xin Long Lin v New Fresca Tortillas, Inc.*,
  2019 US Dist LEXIS 74505 (EDNY May 1, 2019, No. 18-CV-3246 (RJD)
  (RER)) ..................................................................................................................17

*Yuquilema v. Manhattan's Hero Corp.*,
  No. 13-cv-461, 2014 WL 4207106 (S.D.N.Y. Aug. 20, 2014) ...............................17

**Statutes**

29 U.S.C. § 207(a)(1) ...................................................................................................5, 13

29 U.S.C. § 213(a)(15) .......................................................................................................5

General Obligations Law § 5-701[a] .................................................................................14

N.Y. Lab. Law § 195(1) ................................................................................................2, 17

N.Y. Lab. Law § 195(3) .....................................................................................................3

**Other Authorities**

29 C.F.R. § 552.6 ...............................................................................................................5

12 N.Y.C.R.R. § 142.3-1 *et seq.* ........................................................................................5

Fed. R. Civ. P. 56(a) ..........................................................................................................4

N.Y. St. Dep't of Labor, Op. No. RO-09-169 at (Mar. 11, 2010) ...................................9

U.S. Dep't of Labor, Opinion Letter on Fair Labor Standards Act (March 16,
  1995), 1995 WL 1032475 ................................................................................5, 6

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted in support of defendants Americare, Inc. ("Americare") and Martin Kleinman's ("Kleinman")(collectively, "Defendants") motion for summary judgment to dismiss the remaining claims by plaintiffs Estefany Heredia ("Heredia"), Eslaini Fernandez ("Fernandez"), and Estela Taveras' ("Taveras") (collectively, "Plaintiffs") which include claims for damage for: (1) alleged violations of the  Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA"); (2) alleged violations of the New York Labor Law §§ 650 *et seq.* ("NYLL"); (3) breach of contract as third party beneficiaries of an alleged Wage Party Act ("WPA") Contract with New York State; (4) Unjust Enrichment; (5) alleged violations of the Wage Parity Act Minimum Wage Requirement; and (6) alleged breach of contract.  As discussed below, Defendants are entitled to summary judgment dismissing the remaining claims in their entirety.

Plaintiffs filed this case on their own behalf and on behalf of all others similarly situated alleging that Defendants violated the FLSA as well as the NYLL with respect to the payment of Plaintiffs' wages, including overtime and other wage regulations.  This Court conditionally certified a FLSA collective of "[e]mployees who were not paid time and one half their regular hourly rates [for overtime work performed] on or after January 1, 2015."  (Dkt. No. 52).  The collective action claims were settled following a settlement conference on July 31, 2019; however, most of Plaintiffs' individual claims remain.[1]

Plaintiffs were employed by Americare as home health aides ("HHA") for various lengths of time from July 2010 to the present. (Complaint, Dkt. No. 1, ¶¶ 30-32).  The various causes of action alleged by the Plaintiffs essentially stem from/are duplicative of their claims of

---

[1] Plaintiffs' claims that they were not paid the proper overtime rate between January 1, 2015 and October 13, 2015 have been settled and are dismissed with prejudice pursuant to a stipulation filed on December 13, 2019. (*See* Dkt. No. 110).

violations of the FLSA and NYLL provisions regarding minimum wages, i.e. that the Plaintiffs should have received 24 hours' worth of minimum wages as opposed to 13 hours, because they did not get adequate amounts of sleep or meal breaks during their live-in shifts.

However, no rational juror could ever accept Plaintiffs' claims at all, as Defendants had a policy which required Plaintiffs to notify Americare each time they did not receive their requisite sleep and meal breaks and for Plaintiffs to identify for Americare the activities performed during the interrupted sleep and/or meal breaks.  Plaintiffs failed to do so.  Additionally, Americare set up an electronic system whereby Plaintiffs could enter a code to notify them that they had not received sufficient sleep or meal breaks during a shift.  Not once did Plaintiffs enter the respective codes.  Under well-established precedents, no rational juror could ever conclude that Americare "suffer[ed] or permit[ted]" any of the plaintiffs to work for any uncompensated periods.

If the Plaintiffs' minimum wage allegations fail, which they should, then the remainder of Plaintiffs' claims fall like a stack of dominos.  The overtime claims are wholly dependent on the existence of minimum wage violations, and if Plaintiffs were paid correctly, then there is no dispute that Plaintiffs received all the requisite overtime for the hours they worked.  Plaintiffs' other miscellaneous claims, such as unjust enrichment, and the two breach of contract claims must also fail if the Plaintiffs' minimum wage claims fail.  The breach of contract claims further fail, as discovery has unearthed that no contracts exist that were breached.

Plaintiffs' New York Wage Theft Prevention Act ("WTPA") claims (Complaint, Dkt. No. 1, ¶¶ 71-72), brought pursuant to N.Y. Lab. Law § 195(1), should be dismissed as a matter of law because, as is patently clear from the Complaint itself, two of the named Plaintiffs were hired *before* that statute went into effect, and the last received and signed a notice upon her hire.

(*Id.* at ¶¶ 30-32).  Furthermore, discovery has revealed that each Plaintiff received wage notices as required by N.Y. Lab. Law § 195(3).  Americare regularly provided pay rate notices to Plaintiffs (who are union workers and whose wages were negotiated and the subject of a Collective Bargaining Agreement), which Plaintiffs acknowledged having received.  These claims must be dismissed as well.

Lastly, Plaintiffs have asserted claims individually against Mr. Kleinman (Chief Executive Officer of Americare) for alleged violations of FLSA and the NYLL.  One's title or position does not render a person liable for unpaid wages by a corporation.  It was Plaintiffs' burden to establish that Mr. Kleinman so controlled their employment that the "economic reality" dictates the conclusion that he was, in fact, their employer.  As discovery has failed to disclose any control by Mr. Kleinman over the Plaintiffs – indeed, Plaintiffs each testified to either not knowing who Mr. Kleinman is or never having seen him before-- Plaintiffs' burden cannot be met, and the claims against Mr. Kleinman should not be allowed to continue to trial.

## STATEMENT OF FACTS

The Court is respectfully referred to Defendants' SOMF, and the accompanying O'Connor Declaration, in support, as well as the exhibits annexed thereto, which set forth the facts relevant to Defendants' motion for summary judgment.

## ARGUMENT

## POINT I

## DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' MINIMUM WAGE AND OVERTIME CLAIMS BECAUSE THERE ARE NO GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER PLAINTIFFS NOTIFIED AMERICARE OF ANY ALLEGED INSUFFICIENT SLEEP OR MEAL BREAKS

### A.    The Applicable Standard.

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "This standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no <u>genuine issue of material fact</u>." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Under this standard, the substantive law identifies the material facts. *Id*. at 248.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," and that "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id*. (emphasis added) (internal citations omitted). Furthermore, once the moving party has made a properly supported motion for summary judgment, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250.  If the moving party has carried its burden of establishing the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party may not simply rely on its pleadings but must affirmatively come forward with admissible evidence establishing a genuine issue of fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  When the non-

4

moving party's evidence is merely "colorable" or "not significantly probative," the Court must grant summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-250 (1986).

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *EEOC v Bloomberg L.P.*, 967 F Supp 2d 816, 830 (SDNY 2013).  Summary judgment must be granted if no reasonable trier of fact could find for the non-moving party. *Anderson*, 477 U.S. at 249.

The material facts of record in this case are undisputed.  As shown below, this Court should grant Defendants' motion for summary judgment as to the Plaintiffs' remaining claims.

**B.**     **Plaintiffs are not Entitled to Overtime.**

Pursuant to the FLSA, certain employees are entitled to overtime compensation for hours worked over a 40 in a given workweek "at a rate not less than one and one-half times" the employee's regular rate. 29 U.S.C. § 207(a)(1). However, until January 1, 2015, the FLSA contained an exemption for "any employee employed in domestic service employment to provide companionship services for individuals who…are unable to care for themselves." 29 U.S.C. § 213(a)(15).   "Companionship services" is defined as "fellowship, care and protection" including "household work related to the care of the aged or infirm person…[or] performance of general household work: *Provided however*, [t]hat such work is incidental, i.e. does not exceed 20 percent of the total weekly hours worked." 29 C.F.R. § 552.6 (emphasis in original).[2]

According to the Department of Labor ("DOL")'s interpretation of this regulation, work such as "cleaning the patient's bedroom, bathroom or kitchen, picking up groceries, medicine, and dry cleaning would be related to personal care of the patient" and thus would be considered exempt work. U.S. Dep't of Labor, Opinion Letter on Fair Labor Standards Act (March 16,

---

[2] New York State law follows the federal law in that it requires employees that are subject to the exemptions to be paid overtime at one and one half times the minimum wage rate. 12 N.Y.C.R.R. § 142.3-1 *et seq.*

1995), 1995 WL 1032475, at *1. Nonexempt work subject to the 20% limitation includes "activities involving heavy cleaning, such as cleaning refrigerators, ovens, trash or garbage removal and cleaning the rest of a 'trashy' house." *Id.*

Thus, HHAs including the Plaintiffs were exempt from receiving overtime prior to January 1, 2015 and were only entitled to receive 1.5 times the minimum wage if they could show they performed "general household work" for more than 20% of their hours worked per week. *See, e.g., Cowell v. Utopia Home Care, Inc.*, No. 14-cv-736 (LDW)(SIL), 2016 WL 4186976, at *4 (E.D.N.Y. Aug. 8, 2016). This exemption is also applicable to HHAs employed by third party agencies like Americare. *See Severin v. Project OHR, Inc.,* No. 10-cv-9696 (DLC), 2012 WL 2357410, at *5 (S.D.N.Y. June 20, 2012) (providing a history and explanation of the exemption); *see also Bonn-Wittingham v. Project OHR, Inc.*, No. 18-1781, 2019 WL 6273405, at *2–3 (2d Cir. Nov. 25, 2019)(affirming dismissal of similar claims by HHAs who made vague claims to having worked during sleep and meal breaks, or to have performed chores beyond that which is expected of HHAs, holding that "[t]he complaint similarly fails to set forth necessary factual detail to support the inference of the additional working hours necessary for Plaintiffs-Appellants' effective hourly wage to drop below the minimum wage.").

Plaintiffs allege that they began working with America from dates ranging in 2010 through the present.  (Complaint, Dkt. No. 1, ¶¶ 30-32).  Since the FLSA has a statute of limitations of two years, or three for willfulness (*Rodriguez v. Almighty Cleaning, Inc.*, 784 F.Supp.2d 114, 132 (E.D.N.Y. 2011) (citing 29 U.S.C. § 255)), and the NYLL has a statute of limitations of six years (*Id.*), the furthest back Plaintiffs can seek recompense for is from August 6, 2011, six years from the date they filed their original complaint.

As detailed in the SOMF, Plaintiffs' deposition testimonies showed that they did not perform the heavy-duty cleaning that would remove them from the exempt category under the FLSA or NYLL.  Even if the Plaintiffs performed some heavy-duty tasks, they did not perform such tasks more than 20% of their weekly hours.  The HHAs must follow the plan of care developed by the home care nurse with each patient, and HHAs are not allowed to do anything that is not outlined in the plan of care.  (SOMF ¶ 11, 49; Dep. of Bridget Gallagher ("Gallagher Dep."), Ex. U to the O'Connor Decl.. at Gallagher Dep., at 18:17-19; Dep. of Esthefany Heredia ("Heredia Dep."), Ex. A to the O'Connor Decl., at 19:9-19; Dep. of Estela Taveras ("Taveras Dep."), Ex. G to the O'Connor Decl., at 8:19-9:6).

Heredia performed tasks such as cooking, cleaning the bathroom, doing the laundry, going grocery shopping, changing bedsheets, reminding patients to take medication, taking patients to appointments, bathing, dressing, applying lotions/creams, taking care of dentures, changing the patients' diapers, going for walks when a patient could not walk very well, and helping her patients with a wheelchair inside and outside of the house.  (SOMF at ¶ 52, Heredia Dep. at 26:12-27:5; SOMF at ¶ 66; Heredia Dep. at 47:21-23; 47:24-25; SOMF at ¶ 68, Heredia Dep. at 49:25-50:8; SOMF at ¶ 76; Heredia Dep. at 61:17-25).  At no point did she testify to performing heavy duty cleaning such as cleaning the refrigerator, oven, taking out trash, or cleaning the rest of a "trashy" home.

Taveras cleaned the bathroom, dusted, Swiffered floors, went to the supermarket and cleaned kitchen counters.  (SOMF at ¶ 92, Taveras Dep. at 83:3-24, 84:18-85:4).  She did not list any heavy-duty cleaning duties and testified that all of her duties were part of her job as related to the personal care of her patients.  (SOMF at ¶ 93, Taveras Dep. at 84:14-24).

Fernandez did laundry, cooked, cleaned the bathroom, bathed her patient(s), groomed them, changed the sheets, dusted, shopped, dressed, moisturized, and reminded her clients to take their medication.  (SOMF at ¶ 106, Dep. of Eslaini Fernandez ("Fernandez Dep."), Ex. O to the O'Connor Decl., at 20:24-21:7).  She performed laundry twice a week, generally, but would do it right away if her patient soiled himself.  (SOMF at ¶107, Fernandez Dep. at 21:8-18).  To maintain a clean and sanitary living space, Fernandez would clean the bathroom after her patient used it.  (SOMF at ¶108, Fernandez Dep. at 21:20-22:3).  While Fernandez testified that she performed heavier cleaning of the house twice per week, for approximately two to three hours, she did not specify what the heavier cleaning tasks consisted of.  (SOMF at ¶ 109, Fernandez Dep. at 22:4-18).  Even assuming she actually did perform heavy duty cleaning tasks, she only performed such tasks for approximately 6 hours per week, which is significantly less than 20% of her total working hours for the week, which consisted of four 24-hour shifts.  (SOMF at ¶112, Fernandez Dep. at 14:9-16).

Based on the Plaintiffs' own testimony, they did not perform heavy-duty cleaning tasks and to the extent any were actually performed, Plaintiffs could not name such tasks, and further did not perform them for more than 20% of their weekly work hours.  Plaintiffs are thus not entitled to overtime prior to January 1, 2015.

### C.    The Plaintiffs were paid all of their Minimum Wages.

Plaintiffs allege a plethora of minimum wage violations in their amended complaint, including through violations of the FLSA, the NYLL, Wage Parity Act ("WPA"), unjust enrichment, and breach of contract claims.  But none of them were sustained through discovery.

Under Federal Regulations, "an employer can deduct up to eleven hours from a twenty-four-hour shift by deducting eight hours of sleep time (so long as five of those hours are uninterrupted), and up to three one-hour meal breaks."  *De Carrasco v Life Care Servs., Inc*.,

2017 US Dist LEXIS 206682, at *12 (SDNY Dec. 15, 2017, No. 17-cv-5617 (KBF)).  With respect to the NYLL, Courts in this District give deference to a 2010 New York Department of Labor ("NYDOL") opinion letter (the "2010 Opinion Letter"), which essentially follows the FLSA standard.  N.Y. St. Dep't of Labor, Op. No. RO-09-169 at (Mar. 11, 2010).[3]

While Plaintiffs alleged that they were illegally paid for only 13 of the 24 hours worked because they did not get meal breaks or 5 hours of uninterrupted sleep or 8 hours of sleep during a full 24-hour shift (Complaint, Dkt. No. 1, ¶¶ 1, 36, 41), the evidence has conclusively shown that Americare's "live-in" policy is lawful under the FLSA.

Plaintiffs were provided with a "List of Do's and Don'ts" which they acknowledged receipt of.  This document expressly provides that the HHA may not "perform a patient care request that is not on the plan of care unless you get approval," nor may the HHA "perform service that is not authorized on the plan of care."  (SOMF ¶10; "List of Do's and Don'ts," Exs. B, H, and P to the O'Connor Decl.).

HHAs were also given a document called the "Home Health Aides Work Rules" ("Work Rules") that explained their duties, which Plaintiffs Heredia and Taveras acknowledged receipt of.  (SOMF ¶¶ 38-39; Work Rules for Home Health Aides, O'Connor Decl., Ex. D; Acknowledgment of Receipt of Work Rules for Home Health Aides, O'Connor Decl., Exs. K and L). The Rules likewise reinforced the policy that all HHAs are required to clock in and out using the Santrax system to determine the hours worked during one workweek, as well as inputting the amount and types of tasks performed at the end of the shift.  (SOMF ¶ 40; Work Rules for Home Health Aides, O'Connor Decl., Ex. D at AMERICARE-000973).

---

[3] On March 26, 2019, the New York Court of Appeals ruled that the Department of Labor's March 2010 Opinion Letter which articulated the circumstances under which home health aides assigned to 24-hour shifts may have their sleep and meal-breaks excluded from compensable time, is entitled to deference.  *Andryeyeva v. New York Health Care, Inc.*, 33 N.Y.3d 152, 182–83 (2019).

When hired, each HHA is given a copy of the company handbook that serves as a guide to the HHA's employment and explains the company policies. (SOMF at ¶ 11, Employee Handbook, Ex. M to the O'Connor Decl. ("Handbook"). The Handbook requires the HHAs to clock in and out and enter a code for each task the HHA has performed during their shift via the Santrax telephone system. (SOMF at ¶¶ 14-15, Handbook at AMERICARE-001008-9).

If the HHA encounters any problems with clocking in/out or with entering the tasks, they are required to contact their supervisor. (*Id*. at AMERICARE-001009). If a patient does not allow the HHA to use their phone to clock in or out, the HHA can use a mobile app to clock in or out or a device called a fob that goes into the patient's home and gives the HHA a code. (SOMF at ¶ 16, Dep. of Bridget Gallagher ("Gallagher Dep."), Ex. U to the O'Connor Decl.. at 47:10-16). These methods are preferred over using a timesheet, which can also be used. (*Id*. at 47:10-20).

The policy requiring Plaintiffs to notify Americare of interrupted sleep and/or meal breaks is laid out in the "Live In Agreement" that each Plaintiff reviewed and signed. (SOMF at ¶41, O'Connor Decl., Exs. E, Q, W). HHAs who complain about not receiving sufficient sleep or meal breaks are then paid for the full 24 hours. (SOMF at ¶ 28, Gallagher Dep. at 25:25-26:9). Plaintiffs cannot claim they were unaware of this requirement, as they signed the live in agreements and utilized the Santrax system in Spanish, their native language. (SOMF at ¶ 27 Taveras Dep. at 27:22-8). The tasks HHAs code in are kept electronically, in a format easy to print out, called a duty sheet. (SOMF at ¶ 22; Gallagher Dep. at 19:4-22. There is a code for HHAs to enter if they did not get sleep during their shift (66) and one to enter if they did not get sufficient meal breaks (55). (SOMF at ¶¶ 19-20; Gallagher Dep. at 22:16-21, 24:4-9). Americare has no record that any of the Plaintiffs ever entered codes 55 or 66 into the Santrax

system.  (SOMF at ¶ 23; O'Connor Decl. ¶ 28).   After Gallagher joined Americare in 2015, a mailing was sent to all HHAs notifying them of codes 55 and 66. (SOMF at ¶ 24; Gallagher Dep., at 23:3-6, 24:4-22; O'Connor Decl., Ex X).   Americare normally sends mail to HHAs in other languages in addition to English.  (Gallagher Dep., at 23:5-12).

All Plaintiffs also acknowledged receipt of the Call In/Call Out policy which stated that HHAs are required to use the automated Santrax System to call in and call out each day and that they have received their instruction materials and understand their responsibility.  (SOMF at ¶ 21; O'Connor Decl., Exs, F, J, and T).

Not only were Plaintiffs required to use the Santrax system to notify Americare that they did not receive sufficient sleep and/or meal breaks, but the Plaintiffs had another avenue available to them to make a complaint.  Each Plaintiff was a member of the Union and subject to a collective bargaining agreement ("CBA") that dictated the employment practices promulgated by Americare with respect to the HHAs.  (SOMF at ¶62, Heredia Dep. at 39:5-40:5; SOMF at ¶101; Taveras Dep. at 14:14-15:14).   None of the Plaintiffs submitted a complaint in writing to the Union.  (SOMF at ¶62, Heredia Dep. at 39:5-40:5; SOMF at ¶101; Taveras Dep. at 15:17-19; SOMF at ¶118, O'Connor Decl., Ex. O, Fernandez Dep. at 38:4-6).

While Plaintiffs stated they could not take sufficient time for meal breaks, they testified that they had sufficient time to perform tasks like prepare food, not only for the patients, but separate meals for themselves as well.  (SOMF at ¶ 116, Fernandez Dep. at 25:22-23, 25:24-26:4; Taveras Dep. at 40:10-19; Heredia Dep. at 33:21-25).   No rational juror could accept that Plaintiffs could find enough time to prepare full meals but could not find an hour for a meal break without interruption.

Additionally, while Plaintiffs testified that they communicated with their coordinator, Gladys Delgado, to complain about the insufficient sleep or meal breaks, there is no competent evidence in the record in this regard.  Taveras testified that she and Fernandez called Gladys at least once a week to complain about insufficient sleep, however, she had not been able to speak with her because she was unavailable.  (SOMF at ¶ 97, Taveras Dep. at 31:16-32:17, 33:6-16). Instead, she claimed that Fernandez called Gladys to complain about the lack of sleep the week before Taveras' deposition.  (SOMF at ¶ 97, Taveras Dep. at 33:13-23).  This constitutes hearsay and cannot be relied upon as evidence.  *See, Kindle v Dejana*, 238 F Supp 3d 353, 358, n 2 (EDNY 2017)("It is well established that ... the district court in awarding summary judgment[ ] may rely only on admissible evidence.") (internal citations and quotations omitted); *Scotto v. Brady*, 410 Fed. Appx. 355, 361 (2d Cir. 2010) ("We observe that a district court deciding a summary judgment motion has broad discretion in choosing whether to admit evidence, and that the principles governing admissibility of evidence do not change on a motion for summary judgment.") (internal quotations and citations omitted); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985) (A party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment.").

Fernandez, however, specified that when she called Gladys it was in or around 2011 when she first started working 24 hour shifts to notify her that she was not sleeping.  (SOMF at ¶ 115; Fernandez Dep., at 24:5-16).  Fernandez testified that she did not notify Gladys again about the lack of sleep until about two weeks prior to her deposition and a second time the same week that she had her deposition.  (SOMF at ¶ 115, Fernandez Dep., at 27:7-16).  In sum, Fernandez testified she only notified Gladys three times that she did not receive adequate sleep.

An employee who brings suit under § 16 (b) of the FLSA for unpaid minimum wages or unpaid overtime compensation has the burden of proving that she performed work for which she was not properly compensated. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-687 (1946). Where (as here) an employer has kept proper and accurate records in accordance with FLSA, and the employee was paid in accordance with the records it created, any inaccuracies in an employer's records are the result of the employee's failure to accurately report her time or follow the employer's policies. *Id.* Indeed, where an employer keeps accurate records, an employee fails to meet her burden where she is unable "to provide specific facts establishing when, and for how long, [he or she] performed the off-the-clock tasks for which [she] now seek[s] compensation" and where "the undisputed fact [is] that plaintiff [never reported this work on [her] timesheets, and . . . that plaintiff['s] allegations rest solely upon [her] own bare recollections." *Joza v. WW JFK LLC*, 2010 U.S. Dist. LEXIS 94419, *20-22 (E.D.N.Y. Sept. 9, 2010).

It is also well established that Plaintiffs here must show, for each pay period: (1) that she worked overtime beyond 40 hours in a workweek, (2) that she was not compensated for that overtime work, and (3) that Americare knew or should have known that she was performing the uncompensated work. *Kubel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); 29 U.S.C. § 207(a)(1).

Ultimately, Plaintiffs were required to notify Americare if they did not receive sufficient sleep and/or meal breaks, and they agreed to do so. Plaintiffs failed to follow Americare's policy and notify Americare regarding their alleged interrupted sleep or insufficient meal breaks as they did not enter the proper codes into Santrax or follow the procedure articulated in the live-in agreement. As such, Defendants are entitled to summary judgment dismissing the minimum

wage claims under the FLSA, NYLL and WPA.  If the minimum wage claims fail, then so too do the overtime claims after 2015, as Plaintiffs were paid in full for their overtime hours worked. Lastly, since the unjust enrichment claims are derivative of the wage claims, they must also be dismissed as a matter of law based on the foregoing analysis.

## POINT II

### THERE IS NO GENUINE ISSUE OF MATERIAL FACT AS TO THE EXISTENCE OF ANY RELEVANT CONTRACTS AND, AS SUCH, DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE BREACH OF CONTRACT CLAIMS

**A.     Plaintiffs did not enter into Contracts with Defendants.**

The elements of breach of contract under New York law are well established: "(1) the existence of a contract between [the plaintiff] and th[e] defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by th[e] defendant; and (4) damages to the plaintiff caused by th[e] defendant's breach." *VFS Fin., Inc. v Falcon Fifty LLC*, 17 F Supp 3d 372, 379 (SDNY 2014).

"The elements of an effective employment contract consist of 'the identity of the parties, the terms of employment, which include the commencement date, the duration of the contract and the salary.'" *Durso v. Baisch*, 37 A.D.3d 646, 647, 830 N.Y.S.2d 327, *quoting Merschrod v. Cornell Univ.*, 139 A.D.2d 802, 805, 527 N.Y.S.2d 109.  Moreover, where the duration of a contract exceeds one year, in order to satisfy the statute of frauds "a writing must identify the parties, describe the subject matter, state all the essential terms of an agreement, and be signed by the party to be charged." *Durso v. Baisch*, 37 A.D.3d at 647, 830 N.Y.S.2d 327 [internal quotation marks omitted]; *see* General Obligations Law § 5-701[a]; *Devany v. Brockway Dev., LLC*, 72 A.D.3d 1008, 1009, 900 N.Y.S.2d 329.

14

At bar, no such employment contracts exist.  There are no documents listing the commencement date or duration of employment of any of the Plaintiffs.  The only formal contracts that exist are the CBAs, which do not specify the term of employment or name any of the Plaintiffs, or defendant Kleinman by name.  The Live In Agreements and Handbook further do not constitute an employment agreement because neither document identifies the parties, include a commencement or termination date of the plaintiffs' employment, or lists their salaries.  As such, no contract exists between Plaintiffs and Defendants that could have been breached.

**B.     No Contracts exist between Defendants and New York State.**

The third cause of action is for "Breach of Contract – Third Party Beneficiaries of Wage Parity Act Contract With New York State."  (Complaint Dkt. No 1, at 14).  Plaintiffs claim they are "third party beneficiaries of Defendants' contract with government agencies." (*Id.* ¶ 77).  At no point does the Complaint indicate who the government agencies are, nor has discovery revealed any so-called relevant contract(s).

"Under New York law in order to recover as a third-party beneficiary of a contract, a claimant must establish that the parties to the contract intended to confer a benefit on the third party." *Subaru Distribs. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 124 (2d Cir. 2005).  "The contract must clearly evidence an intent by the parties to permit enforcement by the third party, such that the benefit to the third party was sufficiently immediate, rather than incidental ...." *Bayerische Landesbank, NY Branch v. Aladdin Capital Mgmt., LLC*, 692 F.3d 42, 52 (2d Cir. 2012); *Fourth Ocean Putnam Corp. v. Interstate Wrecking Co.*, 66 N.Y.2d 38, 45 (1985) ("[W]e have emphasized when upholding the third party's right to enforce the contract that no one other than the third party can recover if the promisor breaches the contract ... or that the language of the contract otherwise clearly evidences an intent to permit enforcement by the third party....").

A party claiming to be a third-party beneficiary has the burden of demonstrating an enforceable right. *Alicea v New York*, 145 AD2d 315, 317-318 (1st Dept 1988).

At bar, discovery has shown that no such contracts exist with any government agencies. Furthermore, Plaintiffs have failed to identify which, if any government agencies exist with whom Defendants entered into contracts.   Without a contract, there can be no third-party beneficiaries.   Plaintiffs cannot carry their burden and demonstrate any enforceable rights exist. Defendants are thus entitled to summary judgment on this cause of action as well.

Even if there was a valid employment contract or a contract with a government agency as alleged by Plaintiffs, which there is not, Defendants are still entitled to summary judgment, as they did not breach any such contracts.   As argued above in Point I, Defendants paid Plaintiffs the correct amount of minimum wages and overtime wages.   Plaintiffs were required to notify Americare of any insufficient sleep or meal breaks, but they failed to enter the proper codes via Santrax or to submit any complaints in writing to the Union.   As such, the breach of contract claims must be dismissed.

**POINT III**

**PLAINTIFFS' WTPA CLAIMS MUST BE DISMISSED AS A MATTER
OF LAW BECAUSE PLAINTIFFS WERE HIRED *BEFORE* THE
STATUTE WENT INTO EFFECT AND BECAUSE PLAINTIFFS EACH
RECEIVED PAY RATE NOTICES AND PAY STUBS**

**A.      Plaintiffs received Wage Notices.**

Plaintiffs allege that Defendants failed to provide Plaintiffs with "proper notices and wage statements in violation of" the WTPA.  The WTPA, effective April 9, 2011, and further amended on February 27, 2015, requires that every employer provide employees with a notice containing information on rates of pay at the time of hiring. *Xin Long Lin v New Fresca Tortillas, Inc*., 2019 US Dist LEXIS 74505, at *14 (EDNY May 1, 2019, No. 18-CV-3246 (RJD) (RER)) citing N.Y. Lab. Law § 195(1); *see also Guaman v. Krill Contracting*, No. 14-CV-4242 (FB) (RER), 2015 U.S. Dist. LEXIS 74567, 2015 WL 3620364, at *8 (E.D.N.Y. June 9, 2015). All employers must also obtain "a signed and dated written acknowledgement . . . of receipt of this notice." N.Y. Lab. Law § 195(1)(a).  However, the WTPA only gives a private cause of action to an employee "whose employer fails to provide the initial notice at their hire, but not for subsequent failures to furnish the annual notice in following years." *Yuquilema v. Manhattan's Hero Corp.*, No. 13-cv-461, 2014 WL 4207106, at *11 (S.D.N.Y. Aug. 20, 2014) (citing *Guan Ming Lin v. Benihana New York Corp.*, No. 10-cv-1335, 2012 WL 7620734, at *2 (S.D.N.Y. Oct. 23, 2012)); *see also* N.Y.L.L. § 195(1).

Taveras and Fernandez were hired beginning in 2010.  (SOMF at ¶ 78, Taveras Dep. at 7:3-14; SOMF at ¶ 102; Fernandez Dep. at 6:3-5).  Heredia was hired on or around January 31, 2012.  (SOMF at ¶ 45; Heredia Dep. at 7:15-17).  Heredia received and signed a wage notice at her time of hiring.  (SOMF at ¶ 45; Heredia Dep. at 69:18-70:24; O'Connor Decl., Ex. C at AMERICARE-000067).  Plaintiffs additionally received a pay notice every time they went

17

through reorientation.  (SOMF at ¶ 43, Dep. of Michele Falotico ("Falotico Dep."), Ex. V to the O'Connor Decl., at 12:15-13:11; Notice and Acknowledgment of Pay Rate and Payday, O'Connor Decl., Exs. C, I, and S).  They receive the notices again when their wage rate is changed.  (SOMF at ¶ 44; Falotico Dep., at 13:3-19).  The notices are given in the primary language of the employee and are maintained in the employee's personnel file.  (SOMF at ¶ 44; Falotico Dep., at 14:4-13; SOMF at ¶ 43, Falotico Dep., at 12:15-13:11; O'Connor Decl., Exs. C, I, and S).  Plaintiffs' claims on this issue should be dismissed as a matter of law.

       **B.**      **Plaintiffs received Pay Statements.**

As of April 9, 2011, employers are required to furnish each employee with a statement with every payment of wages, listing the following information: (1) the dates of work covered by that payment of wages; (2) the employee's name; (3) the employer's name, address, and telephone number; (4) the rate or rates of pay and basis thereof; (5) gross wages; (6) deductions; (7) allowances, if any, claimed as part of the minimum wage; and (8) net wages.  *See, Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 2015 WL 4757618, at *13 (S.D.N.Y. 2015) (quoting N.Y. Lab. Law § 195(3)); s*ee also Baltierra v. Advantage Pest Control Co.*, 2015 U.S. Dist. LEXIS 124961, 2015 WL 5474093, at *10-11; *Cazarez v Atl. Farm & Food, Inc.*, 2017 US Dist LEXIS 76785, at *15 (EDNY May 17, 2017, No. 15 CV 2666 (CBA)(RML)).

Plaintiffs were given a pay statement with each paycheck.  (SOMF ¶¶ 48, 81; Heredia Dep., at 71:23-25; Taveras Dep. at 73:21-24).  Therefore, Plaintiffs' claims that they did not receive pay statements must be dismissed as a matter of law.

<u>**POINT IV**</u>

**PLAINTIFFS' CLAIMS AGAINST KLEINMAN MUST BE DISMISSED
AS A MATTER OF LAW BECAUSE HE DID NOT SO CONTROL
THE PLAINTIFFS' EMPLOYMENT THAT THE "ECONOMIC
<u>REALITY" IS THAT HE IS PLAINTIFFS' EMPLOYER</u>**

To establish a claim under the FLSA, plaintiffs must prove the following: (1) the defendant is an employer subject to the FLSA; (2) the plaintiffs are "employees" within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *Garcia v Chirping Chicken NYC, Inc*., 2016 US Dist LEXIS 32750, at \*11 (EDNY Mar. 11, 2016, No. 15 CV 2335 (JBW) (CLP)).  The Second Circuit utilizes the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-105 (2d Cir. 2013) (citation omitted); *see also Graziadio v. Culinary Inst. of Am*., 817 F.3d 415, 422 (2d Cir. 2016) (applying factors in FMLA context).

Mr. Kleinman performs none of these four factors.  Kleinman is the CEO of Americare. (SOMF at ¶ 2, Gallagher Dep. at 39:11-16).  However, he does not hire or fire employees.  This duty is undertaken by other employees, including Americare's Vice President, Bridget Gallagher. (SOMF at ¶ 6; Gallagher Dep. at 36:2-11; 38:3-17; 39:11-13; SOMF at ¶ 9; Gallagher Dep. at 7:8-23.) The union negotiates and helps determine the wages and work conditions of the employees, not Mr. Kleinman.  Mr. Kleinman does not negotiate the union contract.  (SOMF at ¶ 7; Gallagher Dep. at 38:3-7.)

In fact, Fernandez does not even know who Kleinman is.  (SOMF at ¶ 3; Fernandez Dep. at 38:11-12).  Taveras knows that Kleinman is "from the agency" but she does not know who he

is.  (SOMF at ¶ 4, Taveras Dep. at 79:9-80:9).  She has never seen or spoken to him.  (SOMF at ¶ 4, Taveras Dep. at 80:10-18).  Heredia has not met Kleinman and does not know what he looks like.  (SOMF at ¶ 5, Heredia Dep. at 76:6-9).  This is not the run of the mill wage and hour case where Mr. Kleinman is involved in the daily supervision of a restaurant-type business, actively giving orders to employees and interacting with them directly.  Mr. Kleinman cannot be determined to be Plaintiffs' employer.

<u>**CONCLUSION**</u>

Based on the foregoing, the Defendants' motion for summary judgment should be granted in its entirety.

Dated: January 17, 2020

PECKAR & ABRAMSON, P.C.
*Attorneys for Defendants*

*/s/ Kevin J. O'Connor*

By:_____
     Kevin J. O'Connor
1325 Avenue of the Americas, 10th Fl.
New York, New York 10019
Tel. (212) 382-0909