UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ESTHEFANY HEREDIA, ESLAINI                    :
FERNANDEZ, and ESTELA TAVERAS,                :
Individually and on Behalf of All Other       :
Persons Similarly Situated,                   :      Docket No.: 17-cv-6219 (RWL)
                                              :
                        Plaintiffs,           :
                                              :
        - against -                           :
                                              :
AMERICARE,      INC.,      MARTIN             :
KLEINMAN and JOHN DOES #1-10,                 :
                                              :
                        Defendants.           :
-------------------------------------------------------X

---

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION AND IN OPPOSITION TO PLAINTIFFS' CROSS MOTION FOR SUMMARY JUDGMENT**

---

PECKAR & ABRAMSON, P.C.
*Attorneys for Defendants*
1325 Avenue of the Americas, 10th Floor
New York, New York 10019
Tel: (212) 382-0909

On the brief:
*Kevin J. O'Connor, Esq.*
*Shannon D. Azzaro, Esq.*

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ......................................................................................................... 4

   POINT I ............................................................................................................ 4

     PLAINTIFFS' AFFIDAVITS AND DECLARATIONS SHOULD BE DISREGARDED AS
     THEY HAVE NOT ATTACHED A TRANSLATION AND IT IS NOT CLEAR
     THAT THE PLAINTIFFS UNDERSTOOD THE CONTENTS OF THE
     DOCUMENTS ................................................................................................. 4

   POINT II ........................................................................................................... 5

     THE SPANISH LANGUAGE DOCUMENTS SHOULD BE STRICKEN FROM THE
     RECORD AS THEY ARE INADMISSIBLE IN THAT THEY ARE
     UNACCOMPANIED BY A CERTIFIED TRANSLATION ............................. 5

   POINT III .......................................................................................................... 8

     ANY DOCUMENTS NOT PRODUCED DURING DISCOVERY SHOULD BE
     PRECLUDED ................................................................................................... 8

   POINT IV .......................................................................................................... 10

     PLAINTIFFS' MINIMUM WAGE AND OVERTIME CLAIMS SHOULD BE
     DISMISSED AS THEY WERE PROPERLY PAID ....................................... 10

     A.     Minimum Wage .................................................................................... 10

     B.     Overtime ............................................................................................... 11

   POINT V ........................................................................................................... 13

     PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED AS THEY HAVE NOT
     RAISED ANY TRIABLE ISSUE OF MATERIAL FACT ............................. 13

     A.     The Wage Theft Prevention Act ("WTPA") Notices were Correct. ...... 13

     B.     The Paystubs were Issued to Each Plaintiff .......................................... 13

     C.     Kleinman is not liable as an Individual ................................................. 14

CONCLUSION.................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*In re Advanced Battery Tech., Inc. Sec. Litig.*,
    2012 U.S. Dist. Lexis 123757 (S.D.N.Y. Aug. 29, 2012) ........................................................5

*Butler v. Raytel Med. Corp.*,
    150 Fed. Appx. 44 (2d Cir. 2005) ........................................................................................14

*Capitol Records, LLC v. Escape Media Grp., Inc.*,
    2015 WL 1402049 (S.D.N.Y. Mar. 25, 2015) ........................................................................8

*Cuzco v. Orion Builders, Inc.*,
    477 F. Supp. 2d 628 (S.D.N.Y. 2007) ....................................................................................4

*DVL, Inc. v. Gen. Elec. Co.*,
    811 F. Supp. 2d 579 (N.D.N.Y. 2010), *aff'd sub nom. DVL, Inc. v. Niagara
    Mohawk Power Corp.*, 490 F. App'x 378 (2d Cir. 2012) ........................................................9

*Espinoza v. 953 Assocs. LLC*,
    280 F.R.D. 113 (S.D.N.Y. 2011) ............................................................................................4

*Jianjun Chen v 2425 Broadway Chao Rest., LLC*,
    2019 U.S. Dist. LEXIS 43893 (S.D.N.Y. Mar. 18, 2019) ......................................................6

*Lidle v. Cirrus Design Corp.*,
    2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) ......................................................................10

*M&Z Trading Corp. v. Hecny Group*,
    41 Fed. App'x 141 (9th Cir. 2002) ........................................................................................6

*Mattis v. Zheng*,
    2006 WL 3155843 (S.D.N.Y. Oct. 27, 2006) ........................................................................4

*New World Solutions, Inc. v NameMedia Inc.*,
    150 F. Supp.3d 287 (S.D.N.Y. 2015)................................................................................7, 18

*Patterson v. Cty. of Oneida, N.Y.*,
    375 F.3d 206 (2d Cir. 2004)..................................................................................................18

*Rockport Co. v. Deer Stags, Inc.*,
    65 F. Supp.2d 189 (S.D.N.Y. 1999)......................................................................................18

*Sicom S.P.A. v. TRS Inc.*,
    168 F. Supp. 3d 698 (S.D.N.Y. 2016)............................................................................4, 6, 18

*Srisuwan Tangtiwatanapaibul v Tom & Toon Inc*.,
   2018 US Dist LEXIS 158500 (S.D.N.Y. Sep. 17, 2018)........................................................5

## STATUTES

Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq.......................................................................1

New York Labor Law §§ 650 et seq. ..........................................................................................1

New York Public Health Law Section 3614-c..........................................................................11

## OTHER AUTHORITIES

Fed. R. Civ. P. Rule 26(a)...........................................................................................................8

Fed. R. Civ. P. 37(c)(1)...............................................................................................................8

Fed. R. Evid. 901 ........................................................................................................................6

## PRELIMINARY STATEMENT

Defendants[1] submit this memorandum in further support of their motion for summary judgment to dismiss  Plaintiffs' remaining claims, including for: (1) alleged violations of the  Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"); (2) alleged violations of the New York Labor Law §§ 650 et seq. ("NYLL"); (3) breach of contract as third party beneficiaries of an alleged Wage Parity Act ("WPA") Contract with New York State; (4) Unjust Enrichment; (5) alleged violations of the Wage Parity Act Minimum Wage Requirement; and (6) alleged breach of contract[2] as well as in opposition to Plaintiffs' cross-motion for summary judgment on liability on their unpaid overtime wage claims. As discussed below, Defendants are entitled to summary judgment dismissing the remaining claims and Plaintiffs' cross motion should be denied.

Plaintiffs' opposition to Defendants' motion, and their affirmative motion papers consisting of their declarations and affidavits attached in support, fail to prove that they are entitled to summary judgment and/or that triable issues of material fact exist.  Plaintiffs claim that the "settlement payment" appearing on certain checks indicates an admission of liability, however, these payments constitute the payments Plaintiffs were to receive under the settlement agreement approved by this Court.  ECF # 104.  There can be no admission of liability based on that settlement, as it was a full and fair settlement of those claims, approved by this Court.  Plaintiffs' claim that overtime was not paid in certain weeks is belied by the clear documentary evidence in the record.  Plaintiffs cite to documents which show that, in certain weeks they claimed interrupted sleep, and were then compensated for it.   Plaintiffs cite to the January 17, 2020 check as some

---

[1] Capitalized terms have the same meaning as in Defendants' motion for summary judgment. (Dkt. No. 116).

[2] Plaintiffs do not oppose Defendants' arguments that the breach of contract claims must be dismissed because: (1) no contract existed between the parties and; (2) no contract existed between Defendants and any other party that would allow for third-party beneficiary status to be claimed by any plaintiff.   Accordingly, those claims should be dismissed.

1

form of "admission" by Americare.  (Taveras Aff. Ex. D, ECF # 149, and Fernandez Aff. Ex. G, ECF # 143-7).  However, it is just the opposite—clear proof that Plaintiffs knew and understood the agreed upon procedure for interrupted sleep, and that they were compensated when they did raise an issue!

Plaintiffs rely upon Exhibit E to the Fernandez Affidavit to purportedly demonstrate that they used Code 66 to report interrupted sleep and that they were not paid for same; however, Exhibit D to the Taveras Affidavit and Exhibit G to the Fernandez Affidavit account for the time cited as interrupted sleep.  Further, Exhibit E to the Fernandez Affidavit (ECF # 143-5) does not demonstrate that Fernandez utilized Code 66.  Instead, it shows that interrupted sleep was, at some point, reported for the pay periods in question.  Page 19 of Exhibit E to the Fernandez Affidavit is a paycheck which demonstrates that Plaintiff Fernandez was, in fact, paid for these hours on October 25, 2019.  As stated in Defendants' policies, once the interrupted sleep has been confirmed, it is paid.  Thus, not only does the opposition not support the cross-motion, it demonstrates why the affirmative motion by Americare should be granted.

Next, Plaintiffs improperly attach documents that were not produced during discovery (which closed on January 8, 2020).  These documents constitute nothing more than self-serving records created in anticipation of litigation and must therefore be excluded and disregarded as untimely and self-serving.  Some of these new documents are also in Spanish, without a certified translation, and must be stricken on this basis as well.

Finally, Plaintiffs' opposition fails to demonstrate any triable issues of material fact sufficient to deny Defendants' motion.  Indeed, Plaintiffs' self-serving affidavits fail to cure the obvious hole in their theory that they performed "general household work" for more than 20% of the time.  The affidavits/declarations –which in essence are carbon copies of each other as to the

duties performed—do not indicate how much time was allocated to which heavy duty tasks in comparison to the total hours worked.  Based on the uncontroverted deposition testimony of each plaintiff, it is clear beyond peradventure that Plaintiffs did not perform such work more than 20% of the time.

Plaintiffs have not proven they are entitled to 24 hours' worth of pay because they do not, and cannot, rebut the fact that they did not notify Defendants that they did not receive sufficient rest or meal breaks, if such an instance occurred, nor have they proven that when and/or if they reported same in recent months that they were not compensated.  They further do not indicate when or how frequently they did not receive sufficient sleep or meal breaks.

Heredia's declaration, with its conclusory statements that, "upon information and belief," Kleinman exerted sufficient control over the Plaintiffs' employment is simply insufficient at this late stage after over a full year of discovery to exert individual liability over him, especially in light of the relevant deposition testimony that indicates he did not control the terms of their employment.

Plaintiffs rely upon a handful of payroll records in which they allege Defendants failed to pay overtime after October 13, 2015 in support of their cross-motion for summary judgment. However, Plaintiffs' time and pay records demonstrate that they did not work overtime during the weeks they reference in their cross-motion.  Quite simply, for those few periods where they claim they worked more than 40 hours without being compensated at their proper overtime rate, the payroll records show that late-reported hours were picked up in the subsequent payroll.  *See* Falotico Decl. ¶¶ 4-12; Exhibits 1, 2, 3, 4, 5, and 6.

As a result of Plaintiffs' inability prove genuine issues of material fact exist, their claims should be dismissed, and Defendants' motion should be granted in its entirety.

**ARGUMENT**

**POINT I**

**PLAINTIFFS' AFFIDAVITS AND DECLARATIONS SHOULD BE DISREGARDED AS THEY HAVE NOT ATTACHED A TRANSLATION AND IT IS NOT CLEAR THAT THE PLAINTIFFS UNDERSTOOD THE CONTENTS OF THE DOCUMENTS**

Plaintiffs attach 3 declarations and 2 affidavits to their papers. The Taveras and Fernandez declarations are recycled from Plaintiffs' motion to certify a class action (ECF # 26-27). The Fernandez declaration is unnotarized and therefore inadmissible.  (ECF # 123 at p. 6).

Each of the Plaintiffs claimed not to speak sufficient English such that, when they were deposed, a translator was used.  "If the declarant himself does not speak and read English[,] . . . the party relying on his English-language declaration must also submit documents sufficient to establish that he understood what he was signing." *Sicom S.P.A. v. TRS Inc.*, 168 F. Supp. 3d 698, 709 (S.D.N.Y. 2016). A certified translation in the declarant's native language is sufficient if the declarant read the translation before he signed the English-language version. *See, e.g., Espinoza v. 953 Assocs. LLC*, 280 F.R.D. 113, 118 (S.D.N.Y. 2011). The declarant can also sign the document in his native language if counsel files the native-language document with a certified English-language translation. *See, e.g., Mattis v. Zheng*, 2006 WL 3155843, at *1 n.1 (S.D.N.Y. Oct. 27, 2006). Alternatively, the declarant may submit a separate declaration indicating that the document has been translated, <u>as long as it is clear that the declarant understood the contents of the document he signed</u>. *See, e.g., Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628, 634 (S.D.N.Y. 2007)(emphasis added).

Here, none of these procedures were followed by Plaintiffs' counsel.  Plaintiffs' counsel failed to provide sufficient documentation to establish that his clients actually knew what they were signing, and this is particularly troubling because the testimony they gave under oath, with the benefit of a translator, was significantly different (thus triggering the "sham affidavit" rule).

4

Each of the declarations states "My first language is Spanish and I do not speak English well but have had this declaration translated for me and believe it to be correct."  (ECF # 122, ¶42; ECF # 123, ¶33; ECF # 124, ¶33).  The affidavits state "I speak and read Spanish but cannot speak or understand or read English" (ECF # 138, ¶2; ECF # 143, ¶2) and "My first language is Spanish and I do not speak English but have had this declaration translated for me and believe it to be correct." (ECF # 138, ¶18; ECF # 143, ¶21).  The affidavits and declarations are not accompanied by any Spanish translations, let alone a certified one, which begs the question of how they could have signed the documents at all.  Courts in the Second Circuit have repeatedly held that, in a situation like this one, the statements are simply not competent evidence.  *See Srisuwan Tangtiwatanapaibul v Tom & Toon Inc*., 2018 US Dist LEXIS 158500, at *8-10 (S.D.N.Y. Sep. 17, 2018).

Therefore, Plaintiffs declarations/affidavits should be stricken from the record, and the motion deemed unopposed.

## POINT II

### THE SPANISH LANGUAGE DOCUMENTS SHOULD BE STRICKEN FROM THE RECORD AS THEY ARE INADMISSIBLE IN THAT THEY ARE UNACCOMPANIED BY A CERTIFIED TRANSLATION

In addition to striking the declarations proffered by Plaintiffs' counsel, the Court should strike from the record the Spanish language documents used by Plaintiffs.

A document presented before the Court that is not in English is inadmissible if it is not accompanied by a certified translation.  *See In re Advanced Battery Tech., Inc. Sec. Litig*., 2012 U.S. Dist. Lexis  123757, at *26 (S.D.N.Y. Aug. 29, 2012)("Even if I were so inclined [to convert motion to dismiss into a motion for summary judgment], I could not consider these Exhibits because they are not presented in admissible form. The fact that the ABAT Defendants failed to

provide certified translations of the words that appear on the screen shots precludes my consideration of them."); *see also Jianjun Chen v 2425 Broadway Chao Rest., LLC*, 2019 U.S. Dist. LEXIS 43893, at *39 (S.D.N.Y. Mar. 18, 2019)("Exhibits 21 and 22 to that affidavit are untranslated-handwritten-Mandarin documents which the Court does not accept as evidence…counsel's lassitude in presenting such untranslated records to the Court is of considerable concern to the Court. Suffice to say that Plaintiffs' counsel's summary of the documents is not evidence.")

Even if a translation had been attached, without providing any affidavits or testimony regarding the competency of the translators, the accuracy and reliability requirements of Federal Rule of Evidence 901 are not satisfied and the documents are not admissible.  *See, Sicom S.P.A. v TRS Inc.,* 168 F Supp 3d at 709, n 9 (citing *U.S. v. One 1988 Chevrolet Cheyenne Half-Ton Pickup Truck*, 357 F. Supp. 2d 1321, 1329 (S.D. Ala. 2005) (declining to consider "undated, unsigned, and unverified" Spanish-language medical document offered in a summary judgment dispute, which was not accompanied by a certified translation and was therefore "undecipherable to those not literate in Spanish")); *accord M&Z Trading Corp. v. Hecny Group*, 41 Fed. App'x 141, 143 (9th Cir. 2002) (finding no abuse of discretion in District Court's exclusion of translated exhibits—rather than untranslated original documents—because "[w]ithout providing any affidavits or testimony regarding the competency of the translators for the translations it submitted, [plaintiff] failed to satisfy the accuracy and reliability requirements of [Fed. R. Evid.] 901")).

Here,  the Court is told, through the Taveras Affidavit, that she made  "written complaints" that she faxed to her coordinator, which purportedly complain that she did not get 5 hours of uninterrupted sleep or three one hour breaks for meals.  (ECF # 138, ¶3).  These handwritten notes attached as Exhibit A (ECF # 147) are in Spanish and are not accompanied by a certified

translation. They were purportedly faxed to Americare, but they are unaccompanied by any fax confirmation sheet that would show when the fax was sent as well as to what number it was sent. Exhibit B to the Taveras Affidavit purports to be more handwritten notes allegedly showing she did not get enough sleep or breaks, but no indication is made as to whether these notes were ever actually sent to Americare, and if so, how. (ECF # 148).

The Fernandez Affidavit attaches "written complaints" that we are told by her counsel she emailed to her coordinator, purportedly complaining that she did not get sufficient sleep or meal breaks as Exhibit A. (ECF # 143, ¶3). These handwritten notes are, likewise, in Spanish and were unaccompanied by a certified translation when presented to the Court. (ECF # 143-1). Even if they could be considered admissible evidence, many are unintelligible as the photos are grainy or the words are not dark enough to appear on the page.  Exhibit B purports to be more handwritten notes allegedly showing she did not get enough sleep or breaks, but again, no indication is made as to whether these notes were ever actually sent to Americare, and if so, how. (ECF # 143-2). Exhibit F purports to be notes taken during a call with the supervisor of the coordinators at Americare, but again, no translation is attached and we are all left to guess as to the significance of such materials for our purposes here. (ECF # 143-6).

"[O]nly admissible evidence" need be considered on summary judgment; in addition, the "principles governing admissibility of evidence do not change on a motion for summary judgment." *New World Solutions, Inc. v NameMedia Inc*., 150 F. Supp.3d 287, 305 (S.D.N.Y. 2015)(*quoting Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (alteration and internal quotation marks omitted)).  Without a certified translation, it is clear that these Spanish language documents are inadmissible.  They should be disregarded and stricken from the record.

## POINT III

## ANY DOCUMENTS NOT PRODUCED DURING DISCOVERY SHOULD BE PRECLUDED

Federal Rule of Civil Procedure 37(c)(1) is intended to prevent the practice of "'sandbagging' an opposing party with new evidence." *Capitol Records, LLC v. Escape Media Grp., Inc.*, 2015 WL 1402049, at *21 (S.D.N.Y. Mar. 25, 2015) (internal quotation marks omitted). Because Plaintiffs came forward with new documents in opposition to the summary judgment motion, in violation of the discovery rules, the Court should disregard such materials.

In relevant part, Federal Rule of Civil Procedure 37(c) provides that if a party fails to provide information as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.  Fed. R. Civ. P. 37(c)(1).

To determine whether preclusion is warranted under Rule 37, a court must consider:

> "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the testimony of the precluded witnesses; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (alterations and internal quotation marks omitted) (quoting *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006)) (the "Patterson Factors")).

In opposing Defendants' motion, and for the first time, Plaintiffs provided this Court with new evidence that was not produced during discovery, by way of handwritten notes purportedly sent to the coordinators (ECF # 143-2 & 143-6).[3]  (*See* Reply Declaration of Shannon D. Azzaro ("Azzaro Reply Decl."), at ¶ 11).  Plaintiffs produced documents corresponding to Exhibit A to

---

[3] Plaintiffs also never produced the document filed as Exhibit E to the Fernandez Affidavit (ECF # 143-5) which Plaintiffs represent Plaintiff Fernandez obtained directly from Americare. (ECF # 136). (*See* Azzaro Reply Decl., at ¶ 11).

the Fernandez Affidavit and pages 3 and 8 of Exhibit B to the Fernandez Affidavit on December 18, 2019, after the initial date for the close of discovery.  (*See* Azzaro Reply Decl., at ¶ 8; Azzaro Reply Decl. Ex. B).  On February 5, 2020, nearly three weeks after Defendants filed their Motion for Summary Judgment, Plaintiffs produced the documents bates-stamped as Taveras 3-1 through 3-34, which correspond to page 2 of Exhibit A to the Taveras Affidavit (ECF # 147) and pages 18-39 of Exhibit B to the Taveras Affidavit (ECF # 148).  (Azzaro Reply Decl. ¶ 12; Azzaro Reply Decl. Ex. D).  This evidence should be excluded. As to the first factor, Plaintiffs have not provided an explanation for their failure to comply with disclosure requirements, particularly given the fact that this Court granted two extensions of time for discovery to be completed and the fact that the purported notes all took place between October 2019 and February 2020, thus Plaintiffs had ample time to produce the majority of the notes before discovery closed on January 8, 2020 (or even before the initial discovery closure date of December 13, 2019).[4]  This factor favors preclusion.

The second and third factors also favor Defendants as Defendants would suffer prejudice by having to review corporate records to determine whether these purported emails and faxes were received, and if so, whether an investigation as to the veracity of the claims was conducted, and the results of any such investigation.  Defendants would also want the opportunity to re-depose the Plaintiffs as to the claims in the purported notes.  Additionally, courts frequently preclude evidence submitted for the first time during summary judgment, after discovery ended.  *See DVL, Inc. v. Gen. Elec. Co.,* 811 F. Supp. 2d 579, 591 (N.D.N.Y. 2010), *aff'd sub nom. DVL, Inc. v. Niagara Mohawk Power Corp.,* 490 F. App'x 378 (2d Cir. 2012) (granting a motion to strike expert

---

[4] We would be remiss if we did not point out that all of these notes, including the notes produced during and after the discovery period and the notes which appeared for the first time attached to Plaintiffs' Opposition and Cross-Motion, while not authenticated, appear on their face to have been generated by Plaintiffs during this late stage in the litigation, some being dated even after Defendants filed their motion for summary judgment.  To permit Plaintiffs to utilize documents clearly generated for the purposes of litigation would be highly prejudicial.

declarations submitted after the close of discovery because "[a]dmitting the . . . [d]eclarations for the purpose of the [c]ourt's determination of the various summary judgment [m]otions would greatly prejudice the [d]efendants")).

As to the fourth factor, though the Court could re-open discovery to review these records, allow Defendants to obtain any defensive documents that may exist and re-depose the Plaintiffs, and re-submit summary judgment motions, doing so would "serve no purpose except to encourage parties to disregard the Court's scheduling order [...and would] result in further delay." *Lidle v. Cirrus Design Corp.*, 2009 WL 4907201, at *7-8 (S.D.N.Y. Dec. 18, 2009). Discovery deadlines were extended twice, at Plaintiffs' request.  (ECF # 102, 109, 112, & 113; Azzaro Reply Decl. at ¶¶ 4-10).  Plaintiffs, instead of producing these documents clearly within their possession before discovery closed, chose to submit them late, during summary judgment.  *These* actions indicate that Plaintiffs have not been acting in good faith, and the fourth factor thus also favors Defendants. These belatedly produced documents should be precluded.

<u>**POINT IV**</u>

**PLAINTIFFS' MINIMUM WAGE AND OVERTIME CLAIMS MUST BE DISMISSED
AS THEY WERE PROPERLY PAID**

**A. <u>Minimum Wage</u>.**

Plaintiffs have not produced any evidence indicating they received less than either five hours of uninterrupted sleep or eight hours of sleep total, as well as meal breaks.  Plaintiffs have provided no evidence as to any dates they allegedly did not receive sufficient sleep or meals, as well as how many actual hours they slept/ate or the dates that they made any complaints.

Plaintiffs' argument that Defendants did not have any policies in place to determine if they received adequate sleep/meal breaks is absurd as Plaintiffs had two key codes to enter into the Santrax system, as well as the ability to notify their coordinators, and speak to the union if they

had issues.  Plaintiffs admitted that they did not notify their union representative. Plaintiffs further did not make complaints in writing. The purported complaints Plaintiffs belatedly attached to their opposition are inadmissible, but even if they were admissible, they do not prove that the Plaintiffs received insufficient sleep. In fact, the records that Plaintiffs attach to their affidavits prove that when Plaintiffs complained of lack of sleep, an investigation was done to verify the insufficient sleep, and if approved, the Plaintiffs were paid for those hours. While Plaintiffs complain that this pay did not appear in the paycheck for that specific week (*see*, ECF # 143, ¶14), the pay appeared in subsequent paychecks, once the investigation to confirm the insufficient sleep or meal breaks was completed.  (*See* Falotico Decl. ¶¶ 13-26; Exs. 7, 8, 9, 10, & 11).  Plaintiff Fernandez was paid for reported interrupted sleep during the period August 17, 2019 through December 16, 2019 in paychecks dated October 25, 2019, November 15, 2019, and January 17, 2020.  (*Id.*)  Plaintiff Taveras was paid for reported interrupted sleep during the period October 6, 2019 through December 26, 2019 in a paycheck dated January 17, 2020.  (*Id.*)

Plaintiffs also claim that the certifications of compliance with Section 3614-c of the New York Public Health Law ("PHL") created an "implied contract" but offer no support for this assertion.  They do not even state with whom this alleged implied contract was entered into.  No implied contract was created, and even if one was, Plaintiffs have not provided any evidence that they are third party beneficiaries, much less that such "contract" was breached.

Defendants are thus entitled to summary judgment on their minimum wage claims.

**B.  Overtime.**

Plaintiffs allege that for certain weeks, they did not receive overtime wages in their pay statements for that week, but they do not account for the fact that due to late reporting of their time, they were paid for these overtime hours in the subsequent weeks' checks.  (*See*, Falotico

Decl. ¶¶ 4-12; Exs. 1, 2, 3, 4, 5, & 6). It is abundantly clear when comparing Plaintiffs' paychecks for the relevant period, their time records, and their pay during the preceding pay period that the alleged "overtime" hours paid in excess of 40 during the relevant weeks were "straight time" hours worked in a preceding pay period which were not accounted for on the previous pay statement due to the timing of the shift reporting. Therefore, Plaintiffs' claims that they did not receive overtime for these weeks have no merit.

As for Plaintiffs' argument that whether they performed more than 20% of general household work cannot be determined on a motion to dismiss, this is not a motion to dismiss. It is a motion for summary judgment, after a full year of discovery. Defendants have presented evidence, in the form of Plaintiffs' own sworn deposition testimony, that the amount of time they claim to have spent on non-exempt tasks does not equate to more than 20% of their work time. (ECF # 116, at pp. 7-8; ECF # 117, ¶110). Plaintiffs have not (and, of course, cannot) rebut their own admissions.

The Taveras and Fernandez affidavits are bereft of any mention at all of the hours they allocated to non-exempt work. Instead, they rely on their outdated declarations that include a conclusory statement that they spend "at least 30%" of their time directly performing household work. (ECF # 123, ¶23; ECF # 124, ¶23). The Heredia Declaration also contains this blanket statement. (ECF # 122, ¶32). Again, however, no mention is made to how much time was spent performing each task, or even what "household work" they claim to have performed. Plaintiffs have failed to prove any genuine issues of material fact exist as to the payment of overtime wages and these claims should also be dismissed.

## POINT V

## PLAINTIFFS' REMAINING CLAIMS SHOULD BE DISMISSED AS THEY HAVE NOT RAISED ANY TRIABLE ISSUES OF MATERIAL FACT

### A. The Wage Theft Prevention Act ("WTPA") Notices were Correct.

Plaintiffs claim that Defendants violated the WTPA[5] by providing paystubs that did not include their correct pay rate or overtime rate.  This is provably false, as Americare provided notices showing the correct amounts Plaintiffs would receive as pay, which sums directly match that which Plaintiffs received by way of their bi-weekly paystubs.   (*See* Decl. of Kevin J. O'Connor, Exs. C, I, & S; ECF # 115-3, 115-9, &115-19).   The only argument advanced by Plaintiffs is that Americare's wage notices were incorrect because Americare allegedly failed to pay Plaintiffs the regular rate of pay for all 24 hours of a "live-in" shift.  As discussed in detail in Defendants' Moving Brief, which points of law were not refuted in opposition, Americare was not required to pay Plaintiffs for all 24 hours of a "live-in" shift and, as discussed above, Plaintiffs were paid for any interrupted sleep. Nor did Plaintiffs even argue what a correct rate of pay would have looked like on such a notice.  Accordingly, summary judgment on the WTPA claim is appropriate.

### B. The Paystubs were Issued to Each Plaintiff.

In opposition, Plaintiffs argue that Americare somehow failed to provide "Rodriguez" with wage statements.  There is no named Plaintiff in this action by that name, and Plaintiffs' counsel seems to have recycled an old brief.  Plaintiffs cite to "SOF ¶54" in support of this statement, but when referencing that paragraph of Plaintiffs' response to Defendants' 56.1 Statement, the fact

---

[5] That branch of Americare's motion which seeks the dismissal of the wage notice claims for alleged failure to give proper notice upon hiring, is unopposed by Plaintiffs, who obviously have no possible claim for relief given their hire dates.

listed is "Twice a week, Heredia cleaned the bathroom…" which Plaintiffs admitted. This claim must be dismissed.

**C.**     **Kleinman is not liable as an Individual.**

Plaintiffs argue that Kleinman is responsible as an owner but provide no factual or legal basis for this argument.   Instead, they merely state he is the owner and CEO based on Defendants' deposition testimony.  With the exception of the Heredia Declaration, the remaining declarations submitted by Plaintiffs are silent on this score.

As concerns the Heredia Declaration, the sham affidavit rule requires that the Court disregard it since it contradicts her deposition testimony. *Butler v. Raytel Med. Corp.*, 150 Fed. Appx. 44, 45 (2d Cir. 2005)(citing *Perma Research & Dev. Co. v. Singer Co*., 410 F.2d 572 (2d Cir. 1969) and denying effect to affidavit which contradicted prior sworn testimony).  There mere juxtaposition of Heredia's Declaration with her deposition testimony shows the games being played here.  Her affidavit alleges the following, largely "[u]pon information and belief":

8.       Defendant Martin Kleinman ("Kleinman") is the President and Chief Executive Officer of the Corporate Defendant and has held these positions since January 1, 2012.

9.       Upon information and belief, Defendants Kleinman participated in the day-to-day operations of the Corporate Defendant.

10.      Upon information and belief, Defendant Kleinman.had authority over the management, supervision, and oversight of the Corporate Defendant's affairs in general and exercised operational control over the Corporate Defendant's home health aide employees and his decisions directly affected the nature and condition of the home health care employees' employment.

11.      Upon information and belief, Defendant Kleinman (1) had the power to hire and fire the home health aide employees of the Corporate Defendant, (2) supervised and controlled the home health aide employees' schedules and conditions of employment and policies regarding home health aides, (3) determined the rate and method of payment of the home health aide employees, and (4) maintained employment records related to the home health aide employees.

(ECF #122, at 2-3).

Yet, here is what she had to say at her deposition:

15

Q.   Who is Martin Kleinman?

A.   The owner of the agency.

Q.   What makes you say that?

     THE INTERPRETER:  I'm sorry.  There's a
word I don't understand.  Do you mind me asking
what she means by that word?

     MR. VENTO:  Certainly.

     (Witness conferred with interpreter off
the record.)

     THE INTERPRETER:  She's saying
in-service.

A.   During the in-service, that's what they
tell us, he is the owner of the agency.

Q.   Who is they?

A.   Many people come to explain things about
in-service.  Sometimes they're nurses, people that
help her out, the information in in-service.

Q.   Are you claiming that the nurses that

teach you how to provide patient services told you that Martin Kleinman owns Americare?

    A.   They mentioned that but not specifically to me.

    Q.   Have you ever met Martin Kleinman?

    A.   No.

    Q.   Do you know what he looks like?

    A.   No.

    Q.   At the in-services, what did they say about Martin Kleinman?

    A.   I overheard a nurse talking to someone else saying that he was the new boss.

    Q.   Who is this nurse?

    A.   I don't know her name.

    Q.   Who was she talking to?

    A.   I don't know the other person's name either.

    Q.   When was this?

    A.   Long ago.  They say Martin Kleinman. That's what they said.

(Azzaro Reply Decl., Ex. A, at 75-76).

Heredia thus conceded at her deposition that her knowledge of Kleinman's role was strictly based on hearsay.   The statements in the Heredia Declaration (ECF # 122, ¶¶ 9-11) are conclusory and are not based on personal knowledge (*e.g.*, each statement is made "[u]pon information and belief") and as such, must be disregarded).  *See New World Solutions, Inc. v NameMedia Inc.*, 150 F. Supp. 3d 287, 305 (S.D.N.Y. 2015) (quoting *Hollander v. Am. Cyanamid Co*., 172 F.3d 192, 198 (2d Cir. 1999) ("[a] court may 'strike portions of an affidavit that are not based upon the affiant's personal knowledge, contain inadmissible hearsay[,] or make generalized and conclusory statements.'")); *see also Rockport Co. v. Deer Stags, Inc*., 65 F. Supp.2d 189, 191 (S.D.N.Y. 1999) (same); *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 219 (2d Cir. 2004) (noting that inadmissible statements in affidavits submitted in support of a summary judgment motion are incapable of raising material disputes of fact); *Sicom S.P.A. v TRS Inc*., 168 F. Supp.3d at 704 (quoting *Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp*., 302 F.3d 83, 91 (2d Cir. 2002) ("The non-moving party may not avoid summary judgment by "relying solely on conclusory allegations or denials that are unsupported by facts.")).

As Plaintiffs cannot raise any facts to support individual liability over Kleinman, the claims against him should be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion for summary judgment and deny Plaintiffs' cross motion in its entirety, along with such other and further relief as the Court may deem appropriate.

Dated: New York, New York
         April 10, 2020

PECKAR & ABRAMSON, P.C.

By:     */s/ Kevin J. O'Connor*
      Kevin J. O'Connor
      *Attorneys for Defendants*
      1325 Avenue of the Americas, 10th Fl.
      New York, New York 10019
      Tel. (212) 382-0909